**BOARD OF DENTAL EXAMINERS**

v.

**S. Melvin BROWN, D.D.S.***

Supreme Judicial Court of Maine.

Argued March 4, 1982.

Decided Aug. 4, 1982.

Rufus E. Brown, Deputy Atty. Gen. (orally), Michael Richards, Asst. Atty. Gen., Augusta, for plaintiff.

---

* Defendant's name has been corrected. It appears in the record of the hearings below as "Melvin S. Brown."

Gross, Minsky, Mogul & Singal, P. A., George Z. Singal (orally), Carl F. Rella, Jerome B. Goldsmith, Bangor, for defendant.

Before McKUSICK, C. J., and GODFREY, NICHOLS, ROBERTS, CARTER and WATHEN, JJ.

GODFREY, Justice.

Defendant S. Melvin Brown, D.D.S., appeals from a judgment entered in Superior Court, Penobscot County, affirming an order of the Administrative Court which revoked his license to practice dentistry upon finding him incompetent and unskillful within the meaning of 32 M.R.S.A. § 1091(1)(C) (1978), which provides: "The Administrative Court Judge may revoke, suspend, or refuse to renew the license of any dentist for any of the following causes: ... (C) Proof of incompetence or unskillfulness ...." On appeal Dr. Brown argues that the terms "incompetence or unskillfulness" are impermissibly vague, that the license revocation power in section 1091(1)(C) constitutes an unconstitutional delegation of legislative authority, that the decision of the Administrative Court was not supported by competent evidence, and that, in any event, the Administrative Court should have limited its order to the revocation of his license to practice orthodontics rather than dentistry in general. We affirm the judgment.

I.

On August 2, 1978, the Board of Dental Examiners (hereinafter "the Board") filed a complaint in Administrative Court against Dr. Brown alleging incompetence and unskillfulness in the practice of dentistry and seeking a revocation of his license. The Board alleged that deficiencies in Dr. Brown's treatment of five particular patients, over treatment periods ranging from five months to seven years, evidenced his incompetence and unskillfulness in orthodontia. It alleged that he had failed to conform to the ordinary norms and standards of the practice of orthodontics in his use—or non-use—of models, x-rays, diagnostic notes, treatment plans, and patient history and progress notes. The Board's allegations were denied by Dr. Brown, who had specialized in orthodontia, apparently without any reported untoward incident, since he first obtained his license from the state in 1951.

At a hearing before the Administrative Court, a substantial amount of evidence was presented, including the testimony of the five patients named in the complaint and several general dentists and orthodontists. The presiding judge entered a decision on February 12, 1980, finding, among other things, that in treating the five patients Dr. Brown had failed (1) to use proper diagnostic procedures, including review of x-ray photographs before treatment, (2) to formulate appropriate plans for treatment and implement them with application of proper appliances, (3) to achieve desired results to a reasonable degree and within a reasonable period of time, and (4) to create and maintain adequate patient-treatment records. The Administrative Court judgment analyzed Dr. Brown's treatment of each of the five patients, setting forth in detail the errors and deficiencies in treatment.

On the basis of those findings, the court decided that Dr. Brown was incompetent and unskillful in the practice of orthodontics within the meaning of 32 M.R.S.A. § 1091(1)(C) and ordered that his license to practice dentistry be revoked for a period of two years. The judgment provided that at the end of two years Dr. Brown might petition for reissuance of his license on an affirmative showing that the areas of deficiency noted in the judgment have been eliminated through the completion of clinical training programs, affiliation with a competent orthodontist performing in a supervisory capacity, or other comparable means.

Dr. Brown moved for further findings of fact and conclusions of law. In response, the Administrative Court set out the standard it used in determining whether defendant had acted incompetently or unskill-

fully within the meaning of the revocation statute. The presiding judge found that "defendant failed to exercise that degree of care and skill that a patient may reasonably expect from one licensed and holding himself out as a dentist limiting his practice to orthodontia," and that "defendant had failed to conform to the minimum standards of acceptable and prevailing orthodontic practice and had thereby demonstrated incompetence and unskillfulness." Dr. Brown appealed the decision of the Administrative Court to the Superior Court, which affirmed the judgment.

## II.

Dr. Brown first argues that the decision of the Administrative Court revoking his license should be vacated because of the absence of regulations defining or interpreting "incompetence or unskillfulness" as used in section 1091(1)(C). *See Megdal v. Oregon State Board of Dental Examiners,* 288 Or. 293, 605 P.2d 273 (1980). He contends that the phrase "incompetence or unskillfulness" is so vague that no dentist can predict accurately whether his conduct falls within the purview of the disciplinary statute and that such vagueness permits ad hoc determinations uncontrolled by any regulatory standards.

In the context of 32 M.R.S.A. § 1091, which provides for the discipline of the profession of dentistry, "incompetence or unskillfulness" plainly refers to incompetence or unskillfulness in the practice of that profession and does not refer to a dentist's incompetence or lack of skill in any other activity. In common parlance, "incompetence" means a lack of the learning or skill necessary to perform, day in and day out, the characteristic tasks of a given calling in at least a reasonably effective way. Competency does not mean perfection, and incompetence is not ordinarily established by the showing merely of an isolated instance in which performance has been inadequate. If, in view of the current state of the art, a dentist's methods and techniques are sound, proof that his performance has been inadequate in rare and isolated instances during a long professional life should not ordinarily subject him to revocation of his license under section 1091(1)(C) for "incompetence or unskillfulness."

■ The expression "incompetence or unskillfulness" is thus not impermissibly vague. It connotes a comparison, with due consideration of the state of the art, between the performance of a dentist who is the subject of discipline under section 1091(1)(C) and the minimally acceptable level of performance, in similar circumstances, by American dentists generally. *Cf. Woolley v. Henderson,* Me., 418 A.2d 1123, 1129 (1980) (medical malpractice); *Roberts v. Tardif,* Me., 417 A.2d 444, 451–52 (1980) (medical malpractice). Unlike the comparison that is made in an action for malpractice, the comparison is made for the purpose of determining defendant's professional competence and skill in general, not merely his competence in the treatment of one particular patient.

The decision of the Oregon Supreme Court in *Megdal v. Oregon State Board of Dental Examiners,* 288 Or. 293, 605 P.2d 273 (1980), relied on by defendant, does not support a different result. In that case, Dr. Megdal's license to practice dentistry had been revoked by the state board of dental examiners for "unprofessional conduct" because he had misrepresented, for the purpose of obtaining malpractice insurance, that his partners in his California practice were employed in Oregon. The court reversed the administrative decision revoking Dr. Megdal's license, holding that the legislature intended the term "unprofessional conduct" to be further defined by administrative rulemaking.

In so holding, the Oregon court found that the statutory standard "unprofessional conduct" could have been intended in one of three different ways: (1) as referring to norms of conduct that are uniformly or widely recognized in the particular profession apart from the views of the agency itself and in that sense are "external" to the law, (2) as expressing the legislature's own licensing standard though in very general terms, or (3) as requiring the agency to

engage in further definitive rulemaking. *Megdal*, 288 Or. at 304–06, 605 P.2d at 278–79. Believing that the phrase "unprofessional conduct" suggested the application of ethical standards requiring judgments of value and policy rather than decisions on the state of the art, the court found that the expression fell in the third classification, requiring definitive rulemaking before disciplinary proceedings could be brought under it. The court reasoned that "unprofessional conduct," unlike "gross ignorance, incompetence or inefficiency," which were also grounds for disciplinary action in Oregon, was not expressive of the state of the art and could not be readily determined from the practices generally followed and accepted by practitioners. *Megdal*, 288 Or. at 308–09, 605 P.2d at 281.

*Megdal* is clearly distinguishable from the present case since standards for "unprofessional conduct" are quite different from the standard for determining "incompetence and unskillfulness" in the practice of dentistry. "Unprofessional conduct" encompasses acts quite different in kind from those that give rise to a claim of "incompetence or unskillfulness." Thus, 32 M.R.S.A. § 1091(1)(H) (1978) provides that "unprofessional or immoral conduct" includes, among other things, use of false or misleading advertising, obtaining fees by fraud or deception, and falsely claiming to be a specialist.

The expression "incompetence or unskillfulness" is not so uncertain in its meaning that further definitive rulemaking by the Board is required before a dentist may be disciplined under section 1091(1)(C). It is sufficient to place a dentist on notice that if his professional performance does not remain at a minimally acceptable level of competence in the current state of the art, his license to practice may be revoked.

Understood in its ordinary meaning, the expression "incompetence or unskillfulness" provides an adequate guide for, and limitation on, the Board's exercise of authority and its range of discretion. "Incompetence or unskillfulness" in section 1091(1)(C) means something less than the minimally acceptable level of learning and skill in the day-to-day practice of dentistry. The plain intent of the statute is to permit the revocation or suspension of the licenses of incompetent dentists in the interest of public health and safety. Further legislative elaboration is not needed to ensure that the Administrative Court exercises its regulatory authority under this statute in accordance with a determination of policy made by the legislature or that it does not exercise unbridled discretion in carrying out the legislative mandate. *See Lewis v. State of Maine Department of Human Services,* Me., 433 A.2d 743 (1981); *Maine School Admin. Dist. No. 15 v. Raynolds,* Me., 413 A.2d 523, 529 (1980); *Small v. Maine Board of Registration,* Me., 293 A.2d 786 (1972); 1 K. Davis, *Administrative Law Treatise* § 3.15 (1978).

### III.

Defendant contends that the evidence presented by the Board of his incompetence and unskillfulness was insufficient because it was limited to his treatment of five patients. He says that no pattern of incompetency was established beyond those five patients and that those isolated examples of treatment should not suffice to prove incompetence, *citing Wright v. Superintending School Committee, City of Portland,* Me., 331 A.2d 640 (1975) and *In re Kerlin,* 151 N.J.Super. 179, 376 A.2d 939 (1977).[1] Rather, he argues that uncontro-

---

1. In the *Wright* case, this Court found that a single isolated incident, though characterized as evidencing a grave lack of judgment, was insufficient to terminate Wright's employment contract on the ground of "unfitness to teach" since the incident did not reflect on Wright's competency or suitability in the classroom or his relationship with students. There are cases, however, in which the challenged con-

duct of a professional has been found so reprehensible that license revocation has been held justified: *Jaffe v. State Dep't of Health,* 135 Conn. 339, 64 A.2d 330 (1949) (treatment of a single patient); *Gibson v. Connecticut Med. Examining Bd.,* 141 Conn. 218, 104 A.2d 890 (1954) (gross unprofessionalism and incompetent conduct with respect to single patient); *Blanchard v. Michigan State Bd. of Examiners*

verted testimony established that the results he usually obtained were satisfactory. Although the cases cited by defendant support the proposition that an isolated instance of improper professional conduct may be insufficient as a basis for revoking a professional license, much more is involved here than a few isolated instances of incompetence. The Board presented ample evidence clearly demonstrating gross incompetence and unskillfulness by the defendant in the practice of orthodontics over a period of several years. From the testimony of the five patients, several orthodontists, including a professor of orthodontics from Tufts University, several general dentists and Dr. Brown himself, the Administrative Court judge found that not only were the results obtained in individual cases by defendant inadequate but that defendant had failed to use proper and prevailing diagnostic procedures and treatment techniques or to maintain adequate records in his care of the five patients.

That Dr. Brown obtained satisfactory results with a number of his other patients does not impair the validity of the court's finding of his incompetence in the practice of orthodontics. Incompetence is not determined by counting and comparing the number of successful and unsuccessful cases. The evidence of record demonstrates a pattern of incompetence by Dr. Brown in the practice of orthodontics illustrated by serious deficiencies in his planning, methodology, technique and record-keeping in the treatment over varied treatment periods of the five patients who testified.

### IV.

The Administrative Court judge did not err in revoking Dr. Brown's license to practice dentistry even though the evidence was limited to his competency in the practice of orthodontics. By Dr. Brown's own admission his practice was limited to orthodontia. He admitted, when questioned, that he was not competent to practice general dentistry as distinguished from orthodontics.

*in Optometry*, 40 Mich.App. 320, 198 N.W.2d

The entry is:

Judgment affirmed.

All concurring.

804 (1972) (single incident).