Henry G. STORRS, M.D., Appellant,

v.

STATE MEDICAL BOARD and Alaska
State Division of Occupational
Licensing, Appellees.

No. 6882.

Supreme Court of Alaska.

April 29, 1983.

See also, Alaska, 661 P.2d 632.

A. Lee Peterson, A. Lee Peterson, Inc., Anchorage, for appellant.

Richard D. Monkman, Asst. Atty. Gen., Anchorage and Wilson L. Condon, Atty. Gen., Juneau, for appellees.

Before BURKE, C.J., RABINOWITZ, MATTHEWS, and COMPTON, JJ., and JOHNSTONE, Superior Court Judge.*

PER CURIAM.

This is an appeal from a superior court order affirming a decision by the State Medical Board to revoke the license of Dr. Henry G. Storrs to practice medicine in Alaska on the grounds that Dr. Storrs was professionally incompetent.

---

* Johnstone, Superior Court Judge, sitting by assignment made pursuant to article IV, section 16 of the Constitution of Alaska.

The substantive issues raised by Dr. Storrs are as follows: (1) the combination of statutory and regulatory standards under which his license was revoked were unconstitutionally vague;[1] (2) the procedures followed by the State Medical Board were improper under AS 44.62.500, the provision in the Administrative Procedure Act which delineates the procedure to be followed in the resolution of contested cases;[2] (3) the Board's decision was not supported by substantial evidence.

Upon consideration, we reject Dr. Storrs' claims. Because we are in agreement with the reasoning of the superior court on each of the above questions, we adopt the court's opinion as the basis for our disposition of this appeal.

▮▮▮ Dr. Storrs' principal claim is that the standard of "professional incompetence" under which his license was revoked was unconstitutionally vague. In addition to the reasoning set forth by the superior court, we note that the recent United States Supreme Court decision of *Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 102 S.Ct. 1186, 71 L.Ed.2d 362 (1982), has clarified the operation of the vagueness doctrine under the due process clause where the constitutionality of a civil statute or regulation is in question. *Flipside* establishes that civil laws must satisfy a minimum requirement of meaningfulness under the federal constitution, but that vagueness scrutiny is a flexible test to be adapted to fit the nature of the challenged regulation.

The degree of vagueness that the Constitution tolerates—as well as the relative importance of fair notice and fair enforcement—depend in part on the nature of the enactment.... The Court has ... expressed greater tolerance of enactments with civil rather than criminal penalties because the consequences of imprecision are qualitatively less severe.

455 U.S. at 498–99, 102 S.Ct. at 1193, 71 L.Ed.2d at 371–72 (footnote omitted). We think that the reasoning of the superior court falls clearly within the dictates of *Flipside.*

Secondly, we note the recent decision by the Supreme Judicial Court of Maine in *Board of Dental Examiners v. Brown, D.D.S.*, 448 A.2d 881 (Me.1982). In that case, a dentist's license was revoked under a statute that provided for such action in the case of proven "incompetence or unskillfulness." *Id.* at 882. Dr. Brown challenged the revocation on a theory quite similar to that relied upon by Dr. Storrs today:

He contends that the phrase "incompetence or unskillfulness" is so vague that no dentist can predict accurately whether his conduct falls within the purview of the disciplinary statute and that such vagueness permits ad hoc determinations uncontrolled by any regulatory standards.

*Id.* at 883.

The court rejected this contention, finding that the words "competence" and "skillfulness" were replete with meaning.

1. The standards employed by the State Medical Board were those found in AS 08.64.330(b) and 12 AAC 40.970. AS 08.64.330(b) provides that:

 After a hearing, a license may be suspended, limited, revoked or annulled, or the licensee may be reprimanded, censured or disciplined by the board for (1) unprofessional or dishonorable conduct as defined in AS 08.64.380(3), (2) professional incompetence, or (3) a violation of this chapter or a regulation adopted under it.

 12 AAC 40.970 (amended 1980, 1981) defined "professional incompetence" as follows:

 As used in AS 08.64 and these regulations, "professional incompetence" means lacking sufficient knowledge or skills or both, in that field of practice in which the physician con-

cerned engages, to a degree likely to endanger the health of his patients.

Dr. Storrs contends that all doctors would be found incompetent under these standards, because all doctors have gaps in their knowledge, and this endangers their patients. In order to satisfy the requirements of due process, Storrs, a Fairbanks practitioner, claims that the level of his performance should have been measured against the standard of medical ability prevalent in Fairbanks and similar communities.

2. Relevant portions of AS 44.62.500 are set out in the superior court decision which is attached, in slightly edited form, as an appendix to this decision. *See infra*, pp. 552–554, for provisions of AS 44.62.500 pertinent to this discussion.

The expression "incompetence or un-skillfulness" is not so uncertain in its meaning that further definitive rulemaking by the Board is required before a dentist may be disciplined.... It is sufficient to place a dentist on notice that if his professional performance does not remain at a minimally acceptable level of competence in the current state of the art, his license to practice may be revoked.

Understood in its ordinary meaning, the expression "incompetence or unskillfulness" provides an adequate guide for, and limitation on, the Board's exercise of authority and its range of discretion.... The plain intent of the statute is to permit the revocation or suspension of the licenses of incompetent dentists in the interest of public health and safety. Further legislative elaboration is not needed to ensure that the Administrative Court exercises its regulatory authority under this statute in accordance with a determination of policy made by the legislature or that it does not exercise unbridled discretion in carrying out the legislative mandate.

*Id.* at 884 (citations omitted). The persuasive reasoning of the Maine Supreme Court provides additional support for the result reached below in this case.

### Attorney's Fees

 We need not address Dr. Storrs' claim that he is entitled to an award of full attorney's fees as a public interest litigant.[3] Dr. Storrs plainly cannot be considered the prevailing party in this case, and he does not suggest that a losing party is entitled to a fee award under the public interest rule.

No fees were assessed against Dr. Storrs by the superior court, and there is therefore no occasion to consider whether such an award was inappropriate.[4]

Even if the posture of this case were such as to present Storrs' claim that he is a public interest litigant, we would hold that Storrs' case was not a public interest lawsuit. We think that Dr. Storrs had a sufficiently strong private interest in challenging the Board's determination that he would have filed suit "even if [the action] involved only narrow issues lacking general importance." *Kenai Lumber Co. v. LeResche*, 646 P.2d 215, 223 (Alaska 1982). *See Newman v. Piggie Park Enterprises*, 390 U.S. 400, 402, 88 S.Ct. 964, 966, 19 L.Ed.2d 1263, 1265–66 (1968) (per curiam); *F/V American Eagle v. State*, 620 P.2d 657, 673–74 (Alaska 1980), *appeal dismissed*, 454 U.S. 1130, 102 S.Ct. 985, 71 L.Ed.2d 284 (1982); *Anchorage v. McCabe*, 568 P.2d 986, 990 (Alaska 1977).

The superior court's order affirming the State Medical Board's revocation of Dr. Henry G. Storrs' license to practice medicine is AFFIRMED.

CONNOR, J., not participating.

### APPENDIX

### OPINION OF THE SUPERIOR COURT FOR THE STATE OF ALASKA, THIRD JUDICIAL DISTRICT (May 12, 1982) (Edited.)

BRIAN SHORTELL, Superior Court Judge.

This is an appeal from a decision and order of the State Medical Board dated

---

3. Dr. Storrs' claim notwithstanding, we note that there is no rule in Alaska law that a public interest litigant must be awarded full attorney's fees. We have held that private attorneys general should be awarded fees in conformity with the federal policy first articulated in *Newman v. Piggie Park Enterprises*, 390 U.S. 400, 88 S.Ct. 964, 19 L.Ed.2d 1263 (1968) (per curiam). *Anchorage v. McCabe*, 568 P.2d 986, 990 (Alaska 1977). We have held that under *McCabe*, the trial court has "discretion to award full or only partial fees to public interest plaintiffs."

*Hutcherson v. State*, 612 P.2d 1017, 1018 (Alaska 1980) (per curiam) (footnote omitted).

4. We have held on past occasions that it is an abuse of the trial court's discretion to assess attorney's fees against a litigant who in good faith has litigated issues of substantial public importance. *Whitson v. Anchorage*, 632 P.2d 232, 233–34 (Alaska 1981); *Douglas v. Glacier State Telephone Co.*, 615 P.2d 580, 594 (Alaska 1980); *Gilbert v. State*, 526 P.2d 1131, 1136 (Alaska 1974).

February 6, 1981, revoking the license of Dr. Henry Storrs.

## FACTUAL BACKGROUND

Dr. Henry G. Storrs is a physician licensed by the State of Alaska to practice medicine. On September 26, 1979, the State Division of Occupational Licensing filed an Accusation seeking to limit, suspend or revoke his medical license. The Division alleged that Dr. Storrs was professionally incompetent pursuant to AS 08.64.-330(b)(2), and 12 AAC 40.970. The Division later filed amendments and supplemental accusations. Dr. Storrs filed his notice of defense on October 3, 1979.

The appointed hearing officer, Rebecca Snow, conducted an eight-day hearing in August 1980. Ms. Snow heard the testimony of twenty-four witnesses, seventeen of whom were physicians, and three of whom were nurses. In addition to oral testimony, 600 pages of hospital records were submitted as exhibits. On December 19, 1980, the hearing officer filed a proposed decision with the State Medical Board, recommending revocation of Dr. Storrs' license to practice medicine. When the Medical Board met in a two-day session in February 1981, counsel for the State, Dr. Storrs, the hearing officer and Dr. Storrs' counsel were present. Before making its decision, the Board met for two hours in a closed session with the hearing officer present, accepted the proposed decision with some deletions, and entered a decision and order revoking Dr. Storrs' license.

## ISSUES ON APPEAL

The appellant has raised the following five issues on appeal:

I. AS 08.64.330(b)(2) and 12 AAC 40.970 are unconstitutionally vague and allow selective enforcement.

II. The Board violated applicable statutory procedures.

III. The Board's Decision is arbitrary and capricious and therefore lacks a reasonable basis.

IV. The Board's findings are an abuse of discretion because they are not supported by substantial evidence.

I.

## AMBIGUITY OF THE TERM "PROFESSIONAL INCOMPETENCE"

The appellant contends that the term "professional incompetence," as it is defined in 12 AAC 40.970, is so ambiguous that it fails to give adequate notice of the conduct prohibited and therefore encourages arbitrary enforcement by the Medical Board.

While our Court has not yet addressed the constitutionality of the term "professional incompetence," a Colorado court has upheld an entire statutory provision that included this term. *See State Board of Dental Examiners v. Savelle* [90 Colo. 177], 8 P.2d 693 (Colo.1932).

■ Most courts considering due process as it relates to licensing statutes and regulations have followed the reasoning of *Connally v. General Construction Co.,* 269 U.S. 385 [46 S.Ct. 126], 70 L.Ed. 322 (1926), requiring that the statutory language be understandable to men of ordinary or common intelligence.

In testing the vagueness of a broadly drawn licensing statute, the court in *Kansas State Board of Healing Arts v. Acker* [228 Kan. 145], 612 P.2d 610, 616 (Kan.1980), applied a standard of "common understanding and practice." There the terms "immoral conduct" and "dishonorable conduct" were upheld against a due process attack.

The New York Court of Appeals has said, in considering a dentist's challenge to the statutory term "unprofessional conduct," that licensing regulations do not have to be so narrowly drawn that they actually "define with particularity acts which would constitute unprofessional conduct." *Bell v. Board of Regents* [295 N.Y. 101], 65 N.E.2d 184, 187 (N.Y.1946). The court was of the opinion that the professional conduct demanded of practitioners was not only embodied in their code of ethics but discernible to a "qualified person." *Compare Pennsylvania State Board of Pharmacy v. Cohen* [448 Pa. 189], 292 A.2d 277 (Pa.1972).

An Oregon court recently ruled that the term "unprofessional conduct" in a licensing statute was "constitutionally adequate as a directive giving the board authority to prescribe standards under which its licensees will be subject to professional discipline." *Megdal v. Oregon State Board of Dental Examiners* [288 Or. 293], 605 P.2d 273, 275 (Or.1980).

An issue in *Cohen, supra,* and *Medgal, supra,* was whether statutory language, similar to that challenged by Dr. Storrs here, gave the licensee, rather than the administrative agency, constitutionally adequate notice of proscribed conduct absent administrative regulations further specifying the prohibited acts. However, the statutory term "professional incompetence" (AS 08.64.330(b)(2)) at issue here has been further defined in the regulations governing the State Medical Board (12 AAC 40.-970). Thus, the question posed is whether the term "professional incompetence," as it is defined by the regulation, violates the constitutional due process guarantee.

The dictionary definition of the term "professional incompetence" is reasonably straightforward.[1] And, as further defined, the challenged term gives a physician adequate notice of the degrees of skill, knowledge, and competence which will be required of him. Twelve AAC 40.970 (amended 1980, 1981) provided:

> "[P]rofessional incompetence" means lacking in sufficient knowledge or skills or both, in that field of practice in which the physician concerned engages, to a degree likely to endanger the health of his patients.

While "professional incompetence" is a broad term, it is not so vague that the administrative agency responsible for implementing the statute cannot formulate standards for professionals subject to its dictates. Read together, the statute and administrative regulation are not so ambiguously drawn that a qualified practitioner with ordinary intelligence and knowledge of professional ethics would be deprived of fair notice of the minimum standard of competence required.

When administrative regulations interpreting licensing statutes follow the general policy of the statutes, courts tend to uphold those regulations. *See Megdal v. Oregon State Board of Dental Examiners, supra.* Further, statutory construction adopted by those responsible for administering a statute should not be overruled in the absence of "weighty reasons." *Kelly v. Zamarello,* 486 P.2d 906 (Alaska 1971). *See also, Whaley v. State,* 438 P.2d 718 (Alaska 1968).

While the appellant contends that the allegedly vague language of the statute and regulation encourages selective and arbitrary enforcement by the Board, the evidence presented has not shown a history or pattern of arbitrary enforcement by the Board. *See Summers v. Anchorage,* 589 P.2d 863 (Alaska 1979). The Board in fact seems to have a minimal history of enforcement; the Storrs case is, apparently, the first time the Board has considered the revocation of a physician's license. In any event, the statute and regulation do not by reason of their language alone, show a danger of arbitrary enforcement; and, the fact that Storrs is the first physician whose license has been revoked does not, without reliable evidence showing arbitrary or selective enforcement, establish a constitutional violation not demonstrated by the statutory language. That language is not unconstitutionally vague and it has not been shown to have resulted in selective and arbitrary action by the Board. Therefore, Dr. Storrs' contentions cannot prevail.

## II.

## VIOLATIONS OF APPLICABLE STATUTORY PROCEDURES

Dr. Storrs contends the Medical Board violated AS 44.62.500(b), by meeting with the hearing officer for two hours in a closed session while the Board considered the pro-

---

1. *Incompetent:* "Without adequate ability, knowledge, fitness, etc.; failing to meet re-quirements; incapable; unskillful." Webster's New World Dictionary (2d College Edition).

posed decision. He bases his argument on the silence of section 500(b) regarding the presence of the hearing officer, and on alleged significant changes in the decision made during the closed session.

AS 44.62.500(a), concerning contested cases heard before an agency, requires the hearing officer to be present when the agency considers its decision:

(a) If a contested case is heard before an agency (1) the hearing officer who presided at the hearing shall be present during the consideration of the case and, if requested, shall assist and advise the agency; and (2) a member of the agency who has not heard the evidence may not vote on the decision.

AS 44.62.500(b), involving contested cases heard by the hearing officer alone, does not make the presence of the hearing officer mandatory, nor does it prohibit the hearing officer from being present:

(b) If a contested case is heard by a hearing officer alone, he shall prepare a proposed decision in a form which may be adopted as the decision in the case. A copy of the proposed decision shall be filed by the agency as a public record with the lieutenant governor and a copy of the proposed decision shall be served by the agency on each party in the case and his attorney. The agency itself may adopt the proposed decision in its entirety, or may reduce the proposed penalty and adopt the balance of the proposed decision.

Dr. Storrs interprets section 500(b)'s failure to require the presence of the hearing officer as equivalent to a command that the hearing officer shall *not* be present during consideration of the case when she alone has presided over the hearings.

The presence of the hearing officer at section 500(a) deliberations "to assist and advise" has been determined by the legislature to be mandatory to avoid possible procedural and substantive errors. However, the formalized procedures of section 500(b) are not controlled by the previous section. In section 500(b) proceedings, the Board, which has not heard the evidence directly, has the advantage of a formal, written proposed decision for its consideration, one which has been at the Board members' and the parties' disposal prior to deliberations. The Storrs case is an example of a complex, formalized proceeding governed by section 500(b).

After extensive evidentiary proceedings presided over by the hearing officer, the thirty-page proposed decision in Dr. Storrs' case was filed December 19, 1980; the Board's decision was made on February 6, 1981. The parties and the Board had the proposed decision before the February 6 meeting. Dr. Storrs' counsel filed a ten-page memorandum dated one date prior to the meeting setting out his objections to the proposed decision, some of which were accepted by the Board.

In a less complex proceeding, the presence of a hearing officer to assist and advise an administrative agency should not always be required. Cases under consideration might be simpler; or the proposed decision might not refer to a voluminous evidentiary record. In Dr. Storrs' case, however, the proposed decision was long, technical, and complex; it had been submitted after extensive evidentiary proceedings which did not take place before the Board; and there were objections from Dr. Storrs that the hearing officer's presence could have been a substantial factor in helping the Board to resolve. In such circumstances, the Board clearly felt the hearing officer should be present.

The absence of a mandatory phrase requiring the hearing officer's presence in section 500(b) deliberations cannot reasonably be interpreted to deprive the Board of the discretion to receive valuable assistance in a case such as this which so clearly required the hearing officer's assistance. The Board was not required to exclude her from its consideration of the proposed decision.

Dr. Storrs also contends the Board erred by refusing to allow him additional argument after it indicated what its decision would be. This argument is based on

two assumptions: (1) The proposed decision was not "adopted" as that word is used in AS 44.62.500(c); and, therefore, (2) section 500(c) required the Board to provide "at a minimum ... either oral or written argument."

Appellant's contentions have no merit. The Board's February 6 decision "adopted with amendments" the proposed decision. The amendments made were minor, the most significant deletion being passages concerning the use and administration of the drug Mepergan. These changes favored Dr. Storrs and they appear to have been made at the urging of his counsel; they cannot reasonably be construed as a failure of the Board to adopt the proposed decision. Thus, they did not bring section 500(c) into operation, and additional oral or written argument was not required. Additionally, the Board did give Dr. Storrs' counsel the opportunity to argue "on the amendments," which counsel declined to do, presumably because he wished instead to argue other matters. Additional argument under these circumstances was neither warranted nor required.

### III.

### STANDARD OF REVIEW

Initially, as to this portion of his attack on the Board's decision, Dr. Storrs contends that the Medical Board, composed of five physicians and two lay persons, lacks the expertise to decide thoroughly and fairly the issue of revocation of a doctor's license to practice medicine and asks the court to substitute its independent judgment for that of the Board.

Storrs further alleges that a lawyer is not capable of rendering a competent decision in the field of medicine. The hearing officer, a lawyer, heard the testimony of twenty-four witnesses, seventeen of whom were doctors, many of whom practiced in Fairbanks, knew Dr. Storrs personally, and some of whom had worked with him on one or more of the cases in question.

Medicine is a complex subject and the State Medical Board is charged with the statutory authority and responsibility of regulating the practice of medicine. The Board is a competent body equipped with the necessary medical knowledge to determine whether a doctor's license to practice should be revoked. See AS 08.64.010; AS 44.62.340; AS 44.62.350; *Kansas State Board of Healing Arts v. Foote* [200 Kan. 447], 436 P.2d 828, 834 (Kan.1968). I see no justification for substitution of my independent judgment for that of the hearing officer, whose diligence and capability are demonstrated in this record, or the Board, a majority of whom are professionally trained in the field of medicine.

Secondarily, appellant argues for review under the "substantial evidence" test. See AS 44.62.570. Under this standard, the reviewing court does not reweigh the evidence or choose between competing inferences; it only determines whether such evidence exists. *Interior Paint Co. v. Rodgers*, 522 P.2d 164, 170 (Alaska 1974). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Keiner v. City of Anchorage*, 378 P.2d 406, 411 (Alaska 1963).

The Board disagrees with Dr. Storrs as to the appropriate standard of review. It argues for application of the "reasonable basis" test. This test is used for the most part in cases concerning administrative expertise as to either complex subject matter or fundamental policy considerations; it is used to review agency action which is "essentially executive in nature." *See Kelly v. Zamarello, supra.* The reasonable basis test requires deference to be given to an administrative determination if it has a reasonable basis in law and fact. *Alaska Public Utilities Commission v. Chugach Electric Association*, 580 P.2d 687, 694 (Alaska 1978), *overruled on other grounds, City and Borough of Juneau v. Thibodeau*, 595 P.2d 626, 629 (Alaska 1979). The reasonable basis test permits the reviewing court to consider factors of agency expertise, policy, and efficiency in reviewing discretionary decisions; it is similar to the standard of "unreasonable, arbitrary, and

capricious action" under which actions committed to agency discretion are traditionally reviewed. *Jager v. State,* 537 P.2d 1100, 1107 (Alaska 1975).

It is not surprising that the parties cannot agree on the appropriate review standard. There would appear to be a similar dispute among members of the Alaska Supreme Court. *See State, Department of Labor v. Boucher,* 581 P.2d 660 (Alaska 1978), in which the court split 3–2 on the question whether the Labor Department's conclusion that unemployment benefit applicants were "not available for suitable work" should be reviewed under the substantial evidence or reasonable basis test (final score: substantial evidence: 3, reasonable basis: 2).

Resolution of this question should depend on the nature of the administrative process under review. Dr. Storrs' revocation hearing was more like a judicial than an executive proceeding. It began with an accusatory pleading and continued along lines substantially similar to those in a contested court case. The ultimate decision depended primarily on findings of fact, which are traditionally reviewed by application of the substantial evidence test. *Jager v. State,* 537 P.2d at 1107. Although revocation proceedings of the Medical Board do involve "agency expertise" in the sense that the majority of the Board members are doctors who are appointed, presumably, for their expertise in the field, this expertise and the presence of complex medical subject matter does not automatically transform what is primarily a quasi-judicial proceeding into one in which considerations of "agency expertise, policy, and efficiency in reviewing discretionary decisions" are fundamental. *See Jager v. State,* 537 P.2d at 1107.

I have concluded Storrs is correct in recommending the "substantial evidence" test. I have used this test in deciding this part of his appeal. A short summary of the evidence will be given in the next section of this opinion. This summary by no means approaches the detail with which the hearing officer listed the evidence in her findings; it is intended merely to describe major areas of the record which tend to support my conclusion that the record is adequate as a basis for the Board's conclusion that clear and convincing evidence was presented proving Dr. Storrs' professional incompetence.

## IV.

## SUBSTANTIAL EVIDENCE

Dr. Storrs' performance as a physician was evaluated according to the regulatory standard of 12 AAC 40.970. Under that standard, the evidence presented must show that as a medical practitioner, Dr. Storrs lacks "sufficient knowledge or skills or both, in that field of practice" in which he engaged "to a degree likely to endanger the health of his . . . patients."

The hearing officer applied a "clear and convincing" standard of proof in evaluating the evidence. Based on the nature of the proceedings and the reasoning of the supreme court in *In Re Hanson,* 532 P.2d 303 (Alaska 1975), the hearing officer decided that a high standard of proof was appropriate.

Hearing Officer Snow heard eight days of oral testimony from physicians familiar with Dr. Storrs. In addition, she read all the depositions published before and during the hearing and reviewed over 600 pages of hospital records. She specifically stated her reasons for not giving the testimony of certain expert witnesses the same weight as other doctors who showed a detailed knowledge of the facts and challenged medical procedures.

Based on the cumulative evidence presented, Hearing Officer Snow concluded that Dr. Storrs demonstrated a pattern of inadequacy which "greatly increased the exposure of his patients to risks of injury, pain and death." "The patterns of inadequacy and failure suggested by these cases include the inability to foresee and recognize common complications, the inability to recognize a need for a consultation regarding a developing complication, and the ina-

bility to identify and apply the most direct and appropriate diagnostic and corrective measures once a complication has developed."

Five of Dr. Storrs' cases were the primary focus of the evidentiary inquiry. These cases took place in the years 1972 to 1977.

In 1972, in a case in which a pregnant woman had a prolapsed umbilical cord which extended outside the vagina, Dr. Storrs attempted manual dilation of the patient's cervix, testified to by one witness as an "operation [which] has no place in modern obstetrics," "a deviation from accepted obstetrics procedure" and not really manual dilatation, but "manual laceration of the cervix." Testimony was presented that the procedure created a risk to the woman of an "incompetent cervix," not a risk to the baby being delivered, but a risk to the patient's next baby, were she to become pregnant again.

In the next case, a 1975 case involving a woman in childbirth who had a retained placenta, Dr. Storrs did not take steps to remove those portions of the placenta which had not been expelled or removed after the birth. Inordinate delay in removing a retained placenta, according to one physician practicing obstetrics and gynecology, involves a risk of infection and bleeding. In addition, Dr. Storrs did not call in a consultant. Although no serious consequences ensued, his actions in this case were deemed a "significant deviation from accepted practice."

Again in 1975, Dr. Storrs treated a young woman for lacerations, abrasions, and a possible concussion received in a mini-bike accident. A Fairbanks plastic surgeon testified Storrs' work left dirt and foreign material in the patient's facial wounds which caused a "tattooing" effect which later required plastic surgery. This "tattooing," according to the witness, was caused by inadequate cleaning of the wounds. Again, according to the witness, there was no possible justification for the amount of foreign material left in the patient's wounds. The witness also testified to a personal experience in which Dr. Storrs had not accepted his offer to teach Storrs updated methods of burn care.

Once again in 1975, Dr. Storrs performed an intestinal bypass operation on a patient suffering from morbid obesity. His initial work-up on the case was described by an expert witness for the State as follows: "[I]n all my years of practice I've never seen a more inadequate history or one that's shorter." [2] According to this witness, Dr. Storrs' mistakes in this case were "so all-embracing and so serious as to not constitute the ordinary run-of-the mill mistakes that every physician can and often does make." Also, this witness testified to Storrs' apparent reluctance to consult others. His testimony on this point was corroborated by other witnesses, who had personal knowledge of the procedures used in the bypass case, and of Storrs' reluctance to consult others. The bypass patient ultimately died.

The final case considered in depth was a liver biopsy performed in 1977. The hearing officer's conclusions can be summarized as stating that Dr. Storrs' procedures in this operation and its post-operative stages showed a lack of knowledge and skill about the procedure, failure to be aware of and deal with common post-operative complications, and inadequate response to the emer-

---

**2.** An indication of the hearing officer's objectivity and balanced approach to the evidence should be noted here. The passage quoted is very strong and might have been the basis for a finding that unequivocally condemned Storrs' work-up procedures in the bypass case. However, the finding does not concentrate solely on the quoted phrase. Instead, it reads as follows:

> The record reflects limited testing work-up and no psychological examination in preparation for the operation. There is no indication that Respondent explained the extensive possible complications of the operation to the patient. However, at the time of this operation, ileojejunal bypasses were widely performed throughout the country without much more in the way of a work-up of the patient.

This type of careful comparison of evidence both favorable and unfavorable to Storrs is the rule, rather than the exception, in the hearing officer's decision.

gency situation which ultimately developed before the patient died. These conclusions are amply supported in the record.

The hearing officer filed almost thirty pages of detailed, accurate factual findings and balanced, thoughtful conclusions which are more than adequate to survive the substantial evidence test. As to the Board's ultimate decision to revoke Dr. Storrs' license, and the expertise of the Board members, on the basis of which Dr. Storrs apparently would have me either (1) substitute my judgment because of an inability to detect "the earmarks of thoroughness and fairness," or (2) reverse for failure of the record to establish a reasonable basis for the decision, or (3) reverse for lack of substantial evidence, I can only say that the record shows the procedures below were thorough, comprehensive and fair. The findings and conclusions are supported by substantial evidence, and the decision clearly has a reasonable basis.

Dr. Storrs' appellate presentation is somewhat confusing in its melding of concepts of arbitrary and capricious action, reasonable basis, and substantial evidence. If he is arguing for reasonable basis review, it is clear the record meets this test as well as the substantial evidence standard, since the Board's procedures, findings, conclusions and ultimate decision have a reasonable basis in law and fact, and fall far short of being unreasonable, arbitrary and capricious. *See Alaska Public Utilities Commission v. Chugach Electric Association,* 580 P.2d 687, 694 (Alaska 1978); *Jager v. State,* 537 P.2d 1100, 1107 (Alaska 1975). If, on the other hand, Storrs' argument as to the reasonable basis of the Board's decision is merely an extension of his constitutional argument, that argument has been rejected in section I of this opinion.

## CONCLUSION

After a review of the record and the briefs, and after oral argument in this case, I affirm the decision of the State Medical Board to revoke Dr. Storrs' license to practice medicine.