Loren D. HALTER, D.O., Appellant,

v.

STATE of Alaska, DEPARTMENT OF COMMERCE AND ECONOMIC DEVELOPMENT, MEDICAL BOARD, Appellee.

No. S–8245.

Supreme Court of Alaska.

Nov. 5, 1999.

Charles A. Winegarden, Winegarden & Whitaker, Kenai, for Appellant.

Maurice McClure, Assistant Attorney General, Anchorage, and Bruce M. Botelho, Attorney General, Juneau, for Appellee.

Before MATTHEWS, Chief Justice, COMPTON, and BRYNER, Justices.

*OPINION*

COMPTON, Justice.

## I. *INTRODUCTION*

Alaska Statute 08.64.326(a)(8)(A) authorizes the Alaska State Medical Board (Board) to sanction a physician when the Board finds that the physician has demonstrated professional incompetence. Professional incompetence is defined by regulation as "lacking sufficient knowledge, skills, or professional judgment ... to a degree likely to endanger the health of his or her patients."[1] The Board found that Dr. Loren D. Halter's failure to adequately chart prescriptions for controlled substances amounted to professional incompetence. This court must decide whether AS 08.64.326 was vague as applied to Dr. Halter, because there were no specific regulations about record-keeping standards to provide Dr. Halter notice of what was required of him.

## II. *FACTS AND PROCEEDINGS*

Dr. Loren D. Halter is a physician practicing in Kodiak. On March 19, 1993, the State Division of Occupational Licensing (Division) filed an Accusation against Dr. Halter alleging that he had not adequately recorded on his patients' charts prescriptions for controlled substances, and that this failure amounted to professional incompetence. The Accusation charged that "Dr. Halter often does not chart in his patients' files the controlled substances that he prescribes for them and often does not chart a patient

evaluation, justification, and/or necessity for the prescription." The Accusation contained twenty-one counts. The first count was a general accusation that the failure to adequately chart amounted to professional incompetence. The other twenty counts dealt with the failure to chart in specific patients' files.

At a hearing held at Dr. Halter's request, the Division dismissed two counts. The Division sought probation restrictions, rather than suspension or revocation of Dr. Halter's license.

The hearing officer found that Dr. Halter had violated standards in Counts I, V, XIV, XV, and XVII. The officer found that "[f]ailure to adequately document and monitor a patient's prescriptions for scheduled drugs could lead to over medication, drug dependence, or addiction." But the officer found that Dr. Halter's "motives in treating the patients under consideration here were praiseworthy—the relief of chronic pain." The officer recommended that Dr. Halter be fined $3,000. The Board adopted the hearing officer's decision, but stayed the fine for two years. If at the end of the two-year period there were no additional violations, the fine would be dismissed.

Dr. Halter appealed the Board's decision to the superior court. The superior court affirmed the Board's decision on Count I to the extent it was based on a violation of AS 08.64.326(a)(8), and on Counts V, XIV, and XV. But it reversed the decision on Count XVII, and on Count I to the extent it was based on a violation of AS 08.64.326(a)(5). The court remanded the case to the Board "so that it may consider whether the sanctions originally imposed in this matter are appropriate in light of this court's findings." On remand, the Board noted that one and one-half of the counts had been reversed; nonetheless, it reimposed the original sanction. The superior court then entered final judgment. Dr. Halter appeals.

## III. *DISCUSSION*

### A. *Standard of Review*

■ On appeal we independently review the merits of the administrative decision and

---

1. 12 Alaska Administrative Code (AAC) 40.970.

give no deference to the decision of the superior court.[2] We apply our independent judgment to constitutional issues, adopting a "'reasonable and practical interpretation in accordance with common sense' based upon 'the plain meaning and purpose of the provision and the intent of the framers.'"[3]

■ Our review of the Board's factual findings is limited to whether there was substantial evidence in the record to support the Board's findings.[4] Substantial evidence is relevant evidence that a reasonable mind might accept as adequate to support the Board's conclusion.[5]

B. *Were Dr. Halter's Due Process Rights Violated Because AS 08.64.326(a)(8)(A) and 12 AAC 40.970 Are Vague and Do Not Provide Notice of the Need to Properly Keep Records?*

■ Dr. Halter argues that his due process rights were violated because he had no notice of a standard of conduct regarding record keeping. He argues that AS 08.64.326(a)(8)(A) is unconstitutionally vague because it is "inherently standardless." He also argues that for the statute to be upheld, the State "must show that an applicable standard existed for record keeping which formed the foundation for the action."

The State argues that "professional incompetence" as used in AS 08.64.326(a)(8)(A) is not unconstitutionally vague. It also argues that substantial evidence supports a record-keeping standard of care.

Alaska Statute 08.64.326(a)(8)(A) allows the Board to sanction a physician if the Board finds after a hearing that the physician "has demonstrated professional incompetence, gross negligence, or repeated negligent conduct."[6] "Professional incompetence" is defined in the Alaska Administrative Code:

> As used in AS 08.64 and these regulations, "professional incompetence" means lacking sufficient knowledge, skills, or professional judgment in that field of practice in which the physician or physician assistant concerned engages, to a degree likely to endanger the health of his or her patients.[7]

As Dr. Halter recognizes, this court already decided in *Storrs v. State Medical Board*,[8] that the term "professional incompetence" in AS 08.64.326(a)(8)(A) is not unconstitutionally vague. But he argues that although the statute is not facially vague, it is vague as applied to him. Dr. Halter argues that it is vague as applied to him because there are no underlying record-keeping standards and that under *Storrs* the State was required to promulgate standards.

*Storrs* does not require the State to promulgate further standards of conduct. The argument that further rulemaking is needed was specifically rejected in *Storrs:*

> The expression "incompetence or unskillfulness" is not so uncertain in its meaning that further definitive rulemaking by the Board is required before a dentist may be disciplined.... It is sufficient to place a dentist on notice that if his professional performance does not remain at a minimally acceptable level of competence in the current state of the art, his license to practice may be revoked.[9]

2. *Alaska Wildlife Alliance v. Rue,* 948 P.2d 976, 979 (Alaska 1997).

3. *Id.* (quoting *Arco Alaska, Inc. v. State,* 824 P.2d 708, 710 (Alaska 1992)).

4. *Handley v. State, Dep't of Revenue,* 838 P.2d 1231, 1233 (Alaska 1992).

5. *Storrs v. State Medical Board,* 664 P.2d 547, 554 (Alaska 1983) (citation omitted).

6. AS 08.64.326(a)(8)(A) provides:
The board may impose a sanction if the board finds after a hearing that a licensee has demonstrated professional incompetence, gross negligence, or repeated negligent conduct; the board may not base a finding of professional incompetence solely on the basis that a licensee's practice is unconventional or experimental in the absence of demonstrable physical harm to a patient.

7. 12 AAC 40.970.

8. 664 P.2d 547 (Alaska 1983).

9. *Id.* at 550 (quoting *Board of Dental Examiners v. Brown, D.D.S.,* 448 A.2d 881, 884 (Me.1982)).

*Storrs* noted that the issue in several cases analyzing similar statutes was "whether statutory language, similar to that challenged by Dr. Storrs here, gave the licensee [physician] ... constitutionally adequate notice of proscribed conduct absent administrative regulations further specifying the prohibited acts." [10] Although the cases cited in *Storrs* [11] held that their statutes that included the term "unprofessional conduct" were constitutionally adequate, *Storrs* noted that in Alaska that term is further defined in 12 AAC 40.970. [12] We concluded that the term "unprofessional conduct" so defined was not unconstitutionally vague and gave sufficient notice to physicians. [13] No further standard was needed.

■ There appears to have been some confusion on this issue among the parties and the hearing officer. The State does not argue that the standard provided by AS 08.64.326 and 12 AAC 40.970 is all that is needed. Rather, the State argues that it met its burden of proof in establishing a record-keeping standard of care. And although the hearing officer recited the standard proscribed by AS 08.64.326 and 12 AAC 40.970 in his findings, he also included the following passage entitled "Standard of Care" in the "Conclusions of Law Common to All Counts":

> The standard of care by which [Dr. Halter's] treatment of patients is to be measured in this proceeding is set forth in AS 09.55.540(1). [Dr. Halter] is required to evidence the degree of knowledge or skill possessed and the degree of care ordinarily exercised under the circumstances, at the time of the treatment under consideration in this proceeding, by physicians in family practice.

> The phrase "under the circumstances" is construed to include the availability of specialists, medical or treatment programs, and/or special facilities; as well as other relevant factors such as the cost of transportation to receive special medical treat-

ment or evaluation, and the nature of work or the lifestyle of patients involved.

Alaska Statute 09.55.540 describes what a plaintiff must establish in a medical malpractice action; the statute does not address a standard for "professional incompetence" in AS 08.64.326(a)(8)(A) and is irrelevant here.

Nevertheless, it appears from the hearing officer's findings on each count that he actually applied the correct standard of professional incompetence, rather than the malpractice standard. For Count I, the hearing officer found that

> [d]epending upon the circumstances in each patient's case, it may be incompetent medical practice to fail to chart prescriptions written for patients in their files, and to fail to document the patient evaluation and necessity for the prescription in order to guard against drug overdoses, substance abuse, and harmful drug interactions, and to keep a record of the patient's medical condition and treatment for future use by any medical provider who treats the patient.

> . . . .

> Failures to document and communicate the treatment plan may cause harm to the patient. However, no actual harm was demonstrated by clear and convincing evidence in the record in this proceeding.

This finding shows that the hearing officer applied the standard of professional incompetence as defined in 12 AAC 40.970. The officer basically found that Dr. Halter was "lacking sufficient knowledge, skills or professional judgment ... to a degree likely to endanger the health of his or her patients." [14] Therefore, although there appears to have been some confusion, it also appears that the officer properly applied the statute to Dr. Halter.

We conclude that AS 08.64.326(a)(8)(A) and 12 AAC 40.970 were not unconstitutionally vague as applied to Dr. Halter.

**10.** *Id.* at 552.

**11.** *Bell v. Board of Regents,* 295 N.Y. 101, 65 N.E.2d 184, 187 (1946); *Megdal v. State Bd. of Dental Examiners,* 288 Or. 293, 605 P.2d 273, 275 (1980).

**12.** *Storrs,* 664 P.2d at 551–52.

**13.** *Id.* at 550, 552.

**14.** 12 AAC 40.970.

C. *Does the Board Have Authority to Discipline a Doctor Under AS 08.64.326(a)(8)(A) For Failure to Properly Keep Records?*

Dr. Halter argues that the Board did not have any authority to sanction him because there is no statute or regulation that requires Dr. Halter to keep records. This is essentially the same argument addressed above; that there needed to be record-keeping standards beyond the standard of professional incompetence in AS 08.64.326(a)(8)(A) and 12 AAC 40.970.

As discussed above, the Board is authorized to sanction a physician who demonstrates professional incompetence.[15] Since the Board found that Dr. Halter's failure to keep records satisfied the definition of professional incompetence in 12 AAC 40.970, and the finding was based on substantial evidence in the record, the Board had the authority to sanction Dr. Halter under AS 08.64.326(a)(8)(A).

D. *Did the Board Improperly Rely on Findings in Counts V, XIV, and XV to Sanction Dr. Halter?*

■ Dr. Halter argues that the Board cannot use its findings in Counts V, XIV, and XV to sanction him because the Board did not find that he had violated AS 08.64.326 in those counts. The State did not address this issue.

To sanction Dr. Halter, the Board needed to have found that he "demonstrated professional incompetence, gross negligence, or repeated negligent conduct."[16] In Count I, the hearing officer essentially found that Dr. Halter was professionally incompetent. In Counts V, XIV, and XV, the officer found that Dr. Halter's action with each patient "constitutes negligent conduct, but this finding for this count alone, does not constitute 'repeated negligent' conduct under AS 08.64.326(a)(8)(A)."

Although the hearing officer found that each count alone did not constitute repeated negligence, we conclude that all three counts

taken together satisfy the "repeated negligent conduct" standard in AS 08.64.326(a)(8)(A). For this reason, we conclude that the sanction may be based on Counts V, XIV, and XV, along with Count I.

E. *Does Substantial Evidence Support the Board's Finding That Dr. Halter Was Professionally Incompetent?*

■ Dr. Halter briefly challenges the sufficiency of the evidence to support the Board's finding of professional incompetence. He argues that there is no evidence in the record to support a finding that his actions may cause harm to a patient and points out that no patients were actually harmed at any time.

To sustain the sanction, there must be substantial evidence to support the Board's conclusion that Dr. Halter's conduct was professionally incompetent.[17] The State presented two doctors from Oregon, Dr. Dobson and Dr. Keepers, who thoroughly reviewed many of Dr. Halter's charts. Dr. Dobson testified that "Dr. Halter's recording was definitely inadequate" because:

He did not give a complete history in very rare cases, that his physical examinations were usually incomplete, that his plan, his working diagnoses were frequently missing, and his treatment plans were sketchy or incomplete. He very rarely gave a good rationale or justification for most of the narcotics and other medications that he prescribed. I did find some, quite a few prescriptions in the loose-leaf file that had not been charted, and he did not keep separate medications lists in his file, so then I had no way of knowing that he'd actually written them other than the fact that I had copies of them in the big books.... Patients that had been seen at irregular intervals did not have interval notes so that I had a great deal of difficulty in determining that Dr. Halter's prescribing was appropriate.

Dr. Keepers similarly testified that Dr. Halter's record keeping was inadequate:

**15.** *See* AS 08.64.326(a)(8)(A).

**16.** AS 08.64.326(a)(8)(A).

**17.** *See Storrs,* 664 P.2d at 554–55.

I felt that in about two-thirds, 22 out of 32 of the charts, that Dr. Halter had prescribed narcotic analgesics without having recorded a rationale or justification or treatment plan concerning the problems. Thus, on a review of the charts, it was not possible to justify most of his prescriptions for these patients.

I also felt that the way in which he provided the prescriptions was unsystematic and would have been difficult to monitor because the chart recording was inadequate. Many times in these records essential parts of the history examination which might have led to a conclusion that the treatment was correct were missing.

Dr. Keepers also testified that "it's unlikely, given the format of the records that I reviewed, that Dr. Halter had a clear idea of the medications he was actually providing to each of these patients. And that's a critical part of the management of patients with chronic pain." He concluded that he thought that Dr. Halter's practices "constitute a risk for the patients involved."

Both doctors testified at length about Dr. Halter's actions in specific cases. Their testimony is sufficient to sustain the Board's finding of professional incompetence. Although Dr. Halter presented evidence that supported a contrary conclusion, it was within the Board's authority to weigh conflicting evidence.[18]

We conclude that there is substantial evidence supporting the Board's conclusion that Dr. Halter's conduct was professionally incompetent.

## IV. CONCLUSION

The judgment of the superior court is AFFIRMED.

EASTAUGH and FABE, Justices, not participating.

---

18. *See Yahara v. Construction & Rigging, Inc.,* 851 P.2d 69, 72 (Alaska 1993).