Terry L. SMITH, Appellant,

v.

Jim SAMPSON, Commissioner of Labor,
and Alaska State Department of
Labor, Appellees.

No. S–3723.

Supreme Court of Alaska.

Aug. 9, 1991.

Rehearing Denied Sept. 13, 1991.

Terry L. Smith, pro se.

Nora King, Asst. Atty. Gen., Fairbanks, and Douglas B. Baily, Atty. Gen., Juneau, for appellees.

Before RABINOWITZ, C.J., and BURKE, MATTHEWS, COMPTON and MOORE, JJ.

## OPINION

MOORE, Justice.

This appeal stems from the State Department of Labor's (DOL) refusal to award Terry Smith unemployment insurance benefits. Smith worked as a cashier for Pay 'n Save Stores, Inc. (Pay 'n Save). He was discharged for accepting a credit card purchase which exceeded the "floor limit" without obtaining management approval. The DOL denied Smith unemployment benefits on the ground that he had been fired

due to "misconduct" within the meaning of AS 23.20.379.[1] Smith filed for further administrative and judicial review, which resulted in additional adverse determinations. He now appeals the superior court's determination that the DOL's decision was supported by substantial evidence on the grounds that his action did not constitute "misconduct," that he was denied due process in the administrative adjudication of his claim, and that the DOL improperly allowed certain evidence against him to be introduced. We affirm the decision of the superior court.

## I.

Smith began working for Pay 'n Save in 1983. Pay 'n Save cashiers were required to obtain management approval prior to accepting credit card purchases over the floor limit of $50.00. In 1988, while working as a cashier at the store, Smith accepted a VISA credit card on a purchase of over $50.00 without obtaining authorization from the store's management. He also accepted a check made out to a different store. On April 27, 1988, Smith was given an employee performance evaluation report in which he was reprimanded for these actions. He was also specifically notified that "[n]o further insubordination and non-cooperation on behalf of Terry Smith will be tolerated by Pay 'n Save and will result in termination of employment." Smith signed the evaluation report.[2] On or near May 31, 1988, Smith was presented a Discover credit card for a purchase of over $50.00.[3] He called over a public address system for management to approve the transaction. When no one responded, he called twice more. He stated that he kept the customer waiting approximately fifteen

---

1. AS 23.20.379 provides in relevant part:

   (a) An insured worker is disqualified for waiting-week credit or benefits for the first week in which the insured worker is unemployed and for the next five weeks of unemployment following that week if the insured worker

   .    .    .    .    .

   (2) was discharged for misconduct connected with the insured worker's work....

2. Smith denies that the allegations contained in the reprimand were accurate. He signed the report where the form indicated: "In signing I do not necessarily indicate agreement. I do indicate that I have read the above comments."

3. Smith claims that the date he accepted the Discover card was May 28, 1988, while Pay 'n Save claims the date was May 31, 1988. Since Smith admits that the incident occurred, the dispute as to the exact date is irrelevant.

minutes, that the customer became irritated, and that other shoppers who had joined the line were also delayed. Smith decided to accept the card without management authorization to avoid angering the customers. Shortly thereafter, the transaction was discovered and Smith was discharged. He was terminated May 31, 1988, for "unsatisfactory work performance."

Smith applied for unemployment benefits provided under the Alaska Employment Security Act on June 15, 1988. On August 24, 1988, he received a Notice of Determination from DOL's Employment Security Division which stated that his benefits had been denied. Smith then sought review by the Appeal Tribunal which sustained the DOL's decision.[4] Smith appealed the Appeal Tribunal's determination to the Commissioner of Labor (COL). On November 10, 1988, the COL denied Smith's appeal based on its findings that: 1) the appeal contained no facts which could not have been presented to the Appeal Tribunal prior to its decision, and 2) there was no prejudicial error in the Tribunal's decision. Smith then appealed to the superior court. After hearing oral argument, the court issued its opinion on December 1, 1989. The court found that there was "substantial evidence in the record to support the DOL's finding that Smith's action was misconduct." It further concluded that "[n]one of Smith's arguments based on the agency's denial of due process are meritorious." Smith now appeals that decision to this court.

## II.

When the superior court is acting as an intermediate court of appeal, we will review the underlying determination independently. *See Barcott v. State Dep't of Pub. Safety,* 741 P.2d 226, 228 (Alaska 1987). Whether Smith was dismissed from his employment for "misconduct" is a factual determination. We will therefore apply the substantial evidence standard of review to the DOL's determination. Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Storrs v. State Medical Bd.,* 664 P.2d 547, 554, *cert. denied,* 464 U.S. 937, 104 S.Ct. 346, 78 L.Ed.2d 312 (1983). In applying this standard, "the reviewing court does not reweigh the evidence or choose between competing inferences; it only determines whether such evidence exists." *Id.* (citing *Interior Paint Co. v. Rodgers,* 522 P.2d 164, 170 (Alaska 1974)).

Smith's due process and evidentiary arguments raise questions of law which we will review *de novo.* We will "adopt the rule of law that is most persuasive in light of precedent, reason, and policy." *Guin v. Ha,* 591 P.2d 1281, 1284 n. 6 (Alaska 1979).

## III.

Smith does not deny that he accepted a Discover card purchase in excess of $50.00 without management approval. However, he claims the superior court wrongly concluded that the DOL's determination that this action constituted misconduct was supported by substantial evidence.[5]

Alaska Statute 23.20.379(a)(2) does not define "misconduct;" however, the generally accepted definition in this context is:

(1) a deliberate, wilful, or wanton disregard of an employer's interest or of the standards of behavior which he has a right to expect of his employee, or

(2) carelessness or negligence of such a degree or recurrence as to manifest equal culpability, wrongful intent, or evil design.

Annotation, *Work–Connected Inefficiency or Negligence as "Misconduct" Barring Unemployment Compensation,* 26 A.L.R.3d 1356, 1359 (1969) (citing *Boynton*

---

**4.** The right to such review is provided under AS 23.20.415.

**5.** Smith also argues that Pay 'n Save's actions constituted wrongful termination of employment. However, Smith has never filed any action disputing the legality of his termination; the appeal before us stems exclusively from the denial of unemployment compensation. The scope of our review is limited to the question whether the DOL improperly refused him unemployment insurance.

*Cab Co. v. Neubeck,* 237 Wis. 249, 296 N.W. 636 (1941)).

Pay 'n Save's policy requiring management authorization of credit card purchases in excess of a floor limit is obviously developed to protect the store's interests. Therefore, under the first prong of the test, we must consider whether there was substantial evidence to support DOL's determination that Smith deliberately, wilfully or wantonly disregarded Pay 'n Save's policy by accepting the Discover card.

The DOL found that Smith was warned on April 27, 1988, that he would be discharged if he accepted another credit card without approval; yet, on May 31, 1988, Smith again accepted a credit card purchase without the required approval. On the basis of these findings, DOL concluded that Smith was discharged for misconduct. The preliminary question before us is whether there is substantial evidence to support the DOL's finding that Smith was warned.

Contradictory evidence was presented on this issue. Smith claimed he had never been warned that acceptance of a charge in excess of $50.00 would result in termination, and that no specific company policy defined proper procedure for employees when management failed to respond to an employee's request for authorization of a transaction. Smith's contentions are verified in that neither the "general rules," nor the "cash register procedures" contained in the company's policy manual state that termination will result from acceptance of a credit card transaction without management approval.

However, the record also contains the April 27, 1988 performance evaluation, signed by Smith, which charges him with apparent "loss of interest in his job" as evidenced by his carelessness in accepting a credit card without authorization. The evaluation unequivocally states further noncooperation will result in discharge. Additionally, the record contains a signed statement of Pay 'n Save's personnel manager, Sharon Lovell, that Smith was warned to correct his "cashiering paperwork problems" and that failure to do so would result in termination. Lovell testified telephonically to the same facts. Finally, Smith admitted that he knew the policy whereby he was required to obtain management authorization before accepting such transactions.

■ Weighing the evidence is the role of the DOL, not the court. *See Miller v. ITT Arctic Serv.,* 577 P.2d 1044, 1049 (Alaska 1978). Thus, even if the evidence might support a different conclusion than that reached by the DOL, if there is sufficient evidence upon which the DOL could reasonably have reached its conclusion, we must affirm.

■ There is substantial support in the record for DOL's determination that Smith was warned a month prior to his discharge that accepting a credit card transaction in excess of $50.00 without management approval would result in termination. Therefore, there is evidence to support the DOL's conclusion that his decision to go forward with the transaction despite the recent warning was a deliberate violation of a rule which Pay 'n Save had a reasonable right to expect him to follow.[6]

Smith contends that his violation of the policy should be excused because he faced "circumstances beyond his control." He argues that due to the difficulty of the situation in which he found himself, he should not be held responsible for the violation, especially since his actions did comply with the company's implied policy of maintaining customer satisfaction.[7]

---

**6.** In Smith's words:

I had no control over the lines of people when there's one cashier. I have to do something. So when management does [not] show up, Your Honor, I have to literally *take charge* and do the best I can, look at the interest of my employer.... I'm not denying I know the policy, I'd been employed there for six years

... and I know what to do in circumstances like that. (Emphasis added).

**7.** Smith places considerable reliance on *Shop 'n Save Warehouse Foods, Inc.,* 85 Lab.Arb. (BNA) 495 (1985) (Newmark, Arb.), in which it was determined that Shop 'n Save had improperly suspended a cashier for five days for voiding certain items without the required management

Although Smith was undoubtedly in an awkward position, situations in which the policy might cause customer dissatisfaction could occur with some frequency. Yet, Pay 'n Save did not describe any exceptions to its rule. On the contrary, Smith's supervisors appear to have made a conscious effort to convey the importance and rigidity of the policy to Smith. Thus, Pay 'n Save could reasonably expect him to comply with the rule regardless of the circumstances in which its observance arose. Furthermore, the situation was clearly not entirely "beyond his control." Alternatives to violation of the policy were available to Smith. For example, Smith could have stated that he could not help the customer, and asked the customer to stand aside and wait while he assisted other customers. This would have complied with the rule, while avoiding the risk that other customers would be angered by the delay.

■ We conclude that Smith's willful violation of a policy of which he had been warned just one month previously constituted misconduct.[8] Therefore, we affirm the superior court's determination that there was substantial evidence to support the decision of the DOL.

approval. *Id.* at 495. Notably, *Shop 'n Save* concerns administration of discipline under a collective bargaining agreement and not denial of unemployment insurance; the opinion does not address the question of misconduct.

Furthermore, to the extent the issue in *Shop 'n Save* is analogous to the question before us, the two cases are factually distinguishable. In *Shop 'n Save*, the company had a system of progressive discipline whereby it would first give employees who violated the policy a written warning. If there was a second violation, a five day suspension would be imposed. The arbitrator concluded that the company violated its disciplinary procedure by simultaneously punishing the employee for two violations of its policy. *Id.* at 500. Here, there is no serious contention that Pay 'n Save violated a company policy.

8. *Cf.; Medcenter One, Inc. v. Job Serv,* 410 N.W.2d 521 (N.D.1987) (affirming finding nurse's discussion of her personal life with a patient, following a warning that such behavior would result in termination, was misconduct); *In re Claim of Boulware,* 47 N.Y.2d 928, 419 N.Y.S.2d 492, 393 N.E.2d 487 (1979) (affirming finding of misconduct where employee discharged for disobeying clear instruction given one day before); *In re Claim of McIntee,* 64

## IV.

Smith claims that he was denied due process in the administrative adjudication of his claim and that the DOL improperly admitted certain evidence against him. As the DOL correctly notes, these issues are not raised in Smith's Statement of Points on Appeal. Thus, these claims are not properly before us. Alaska R.App.P. 210(e). However, in light of the fact that Smith generally complied with the requirements of Rule 210(e), it may be appropriate to relax certain procedural requirements in view of Smith's status as a *pro se* litigant. *See Bauman v. State Div. of Family & Youth Serv.,* 768 P.2d 1097, 1099 (Alaska 1989) (*pro se* litigants are expected to acquire general familiarity and to attempt to comply with the rules of procedure); *Breck v. Ulmer,* 745 P.2d 66, 75 (Alaska 1987) (pleadings of *pro se* litigants should be held to less stringent standards than those of lawyers), *cert. denied,* 485 U.S. 1023, 108 S.Ct. 1579, 99 L.Ed.2d 894 (1988).

■ Smith's primary due process claim is that the DOL excluded material evidence.[9] First, he argues that it failed to

A.D.2d 1003, 408 N.Y.S.2d 841 (1978) (finding of disqualifying misconduct upheld as to an ambulance driver who was discharged for exceeding company speed limit of 30 mph after having been warned *not* to speed).

9. Smith also claims that he was not afforded due process because there were "too many issues" and because he was not notified of the issues which would be addressed by DOL at his hearing. We reject this argument. Not only does Smith fail to offer legal authority for his position, but the factual basis for his claim is also inadequate.

Smith's only support for this claim is a reference to a document which he quotes as stating "Issues to be heard" and which he interpreted as meaning that the DOL would consider more than one issue. He never argues that the DOL in fact considered issues of which he had not been notified. Furthermore, the document to which Smith appears to be referring (we are unable to locate any document in the record which precisely matches his description) is a notice of hearing which was sent to Smith prior to the review of his claim by the Appeal Tribunal. The form states: "Issue(s) to be heard: 1. Reason for claimant's separation from work

subpoena certain witnesses he wanted to call. However, 8 AAC 85.153(j) provides that witnesses will be subpoenaed "only upon a showing of necessity." [10]   Nowhere does Smith claim or show that the witnesses refused to testify or that subpoena's were necessary for any reason. Smith also alleges that his work schedule for the day in question should have been produced and considered at the hearing. He offers no explanation of what the schedule would have shown, or how it is relevant.

■ Finally, Smith asserts that the Employer's Statement which was presented at his hearing was hearsay. However, AS 23.20.420(a) provides that, "[a]n appeal tribunal shall inquire into and develop all facts bearing on the issues and shall receive and consider evidence *without regard to statutory and common law rules.*" (Emphasis added). Moreover, Smith give no indication that a hearsay objection was made at the hearing. In the absence of a hearsay objection, hearsay evidence is competent evidence which may be considered.

■ Therefore, we reject Smith's due process arguments and his contention that the DOL improperly considered certain evidence. In light of our holding that there was substantial evidence to support the DOL's determination that Smith was discharged for misconduct, we affirm its denial of his unemployment benefits pursuant to AS 23.20.379.

AFFIRMED.

with the above-named employer." The form is not ambiguous. There is no evidence in the record to suggest that the DOL considered any issue or issues of which Smith was not notified.

**10.** In the Appeal Information supplied to claimants, including Smith, the DOL advises claimants:

4. Arrange for your witnesses. If there are persons who actually saw or heard something you need to prove, ask them to be witnesses. Ask them to come to the hearing or give their telephone number to the Appeal Tribunal. If the person will not testify otherwise, you may ask the Appeal Tribunal to subpoena the witness.