**G.A.D., a minor, Appellant,**

v.

**STATE of Alaska, Appellee.**

**A–4430.**

Court of Appeals of Alaska.

Dec. 17, 1993.

Margi Mock, Asst. Public Defender, and John B. Salemi, Public Defender, Anchorage, for appellant.

Steven D. DeVries, Asst. Atty. Gen., Anchorage, and Charles E. Cole, Atty. Gen., Juneau, for appellee.

Anita L. Alves, Asst. Public Advocate, and Brant McGee, Public Advocate, Anchorage, for guardian ad litem.

Before BRYNER, C.J., and COATS and MANNHEIMER, JJ.

*OPINION*

MANNHEIMER, Judge.

G.A.D. was adjudicated a delinquent minor for sexually abusing his three-year-old broth-

er. He was placed in residential sex offender treatment at the Jesse Lee Home in Anchorage. G.A.D. failed to show improvement after ten months of treatment, and he committed a new offense by escaping from the Home. As a consequence, the Jesse Lee staff, the Division of Family and Youth Services, and G.A.D.'s guardian ad litem all asked the superior court to order G.A.D. institutionalized at the McLaughlin Youth Center so that he could receive a more structured, confrontational sex offender treatment.

In testimony given at the disposition hearing, G.A.D.'s mother characterized her son as manipulative, deceitful, and self-pitying. She stated that G.A.D. had failed to respond to treatment at the Jesse Lee Home because he refused to acknowledge that he had any problem. She believed that her son needed to be in a place with constant supervision, where he would be confronted about his inappropriate behavior and attitudes.

Jeri Lynn Fairley, a clinical therapist employed by Alaska Children Services, works at the Jesse Lee Home treating juvenile sex offenders. Fairley testified that, despite treatment, G.A.D. continued to groom other Jesse Lee residents for sexual activity. She believed that G.A.D. posed a high danger because he was one of the few juveniles who had re-offended while participating in the sex offender program.[1] Fairley stated that G.A.D. appeared to be extremely self-centered, showing no empathy either for his victims or for anyone else.

According to Fairley, G.A.D. failed to perceive the seriousness of his conduct and failed to take responsibility for his behavior. He acted as if the Home's rules did not apply to him. Fairley concluded that G.A.D. needed "a highly structured environment so that the rules and restrictions, [and the] consequences of his behavior, [can] be clearly laid out for him."

Fairley believed that G.A.D.'s suggested alternative of foster care would not be restrictive enough for him. Foster parents would not be able to provide the around-the-clock monitoring G.A.D. was receiving at the Jesse Lee Home. Fairley noted that, even with this constant monitoring, G.A.D.'s behavior had not been good at Jesse Lee. Fairley concluded that, from a therapeutic point of view, G.A.D.'s placement in a foster home would be counter-productive. She also recommended against placing G.A.D. in any group residential facility similar to Jesse Lee. Given G.A.D.'s failure to improve in the group home environment at Jesse Lee, Fairley concluded that G.A.D. needed a confrontational environment where he would receive immediate responses to his inappropriate behavior. For these reasons, Fairley recommended placing G.A.D. at the McLaughlin Youth Center.

Joan Moyland, G.A.D.'s probation officer with the Division of Family and Youth Services, also testified that institutionalizing G.A.D. at the McLaughlin Youth Center would be appropriate. She reported that G.A.D. had told her that he didn't feel he was being rewarded for his good behavior at Jesse Lee, so he didn't see any reason for him to try to maintain good behavior.

Moyland told the court that foster placement would not be appropriate for G.A.D. because he was not motivated to change his behavior. He had engaged in serious sexual misbehavior, and he had not responded to treatment at the Jesse Lee Home. One of the main reasons for G.A.D.'s lack of improvement at Jesse Lee was that G.A.D. did not understand that he needed treatment. Moyland believed that, until G.A.D. made significant changes in his behavior, he would continue to represent a danger to the community; and she pointed out that G.A.D. would have more opportunity to translate that danger into reality if he were placed in a foster home.

Moyland also recommended against placing G.A.D. in another residential program such as the Kenai Care Center, given G.A.D.'s lack of progress at the Jesse Lee Home. Moyland, who is familiar with all the potential placements within Alaska, described the Kenai Care Center as having a program similar to that of the Jesse Lee Home, except that the rules at the Kenai

---

**1.** G.A.D. had exposed himself to another male juvenile at the Jesse Lee Home.

Care Center are more lenient, the therapy is less intensive, and residents at the Kenai Care Center attend school in the community. (Jesse Lee has a self-contained school for the juveniles residing there.)

Moyland told the court that, since G.A.D. failed to improve at the Jesse Lee Home, it was unrealistic to expect him to improve at the Kenai Care Center. Moreover, because G.A.D. would have more access to the community at the Kenai Care Center, he would pose a greater danger. Thus, she concluded, the Kenai Care Center would not be an appropriate placement for G.A.D.

Moyland testified that there were no other treatment options available. Consequently, the sex offender program at the McLaughlin Youth Center represented the least restrictive treatment option that would meet G.A.D.'s needs.

G.A.D. opposed the requested institutionalization. He conceded that his placement at the Jesse Lee Home had not worked. Nevertheless, he argued that the State had failed to show that institutionalization at McLaughlin was required—i.e., that no less restrictive alternative existed that would adequately achieve his rehabilitation and protect the public.

G.A.D.'s attorney suggested that G.A.D. be placed in a foster home, and that he receive out-patient sex offender therapy while living there. She told the court that she would present testimony at the hearing to demonstrate that therapists were available in Anchorage "who do out-patient therapy for ... sex offenders, and [also] that there are ... new [treatment] groups being formed ... for juvenile sex offender[s]." However, despite her offer of proof, G.A.D.'s attorney presented scant evidence about any such programs.

In fact, the one witness G.A.D. did present—his guardian ad litem, Marsha Honea—told the court that foster home placement would not be appropriate. Concurring in the recommendations of G.A.D.'s mother, his therapist, and his probation officer, Honea told the court that G.A.D. needed more intensive treatment and more structure than he would get in a foster home. He needed to be placed in a structured environment where he would be "safe with others and safe with himself". Although Honea did not want to see G.A.D. placed in McLaughlin, she told the court that there were no other viable alternatives.

Following this day and a half of testimony and argument, and after considering the case overnight, Superior Court Judge John Reese ordered G.A.D. committed to the sex offender treatment program at the McLaughlin Youth Center. G.A.D. appeals the superior court's order. We affirm.

■■■ G.A.D. points out that Alaska Delinquency Rule 23(d) requires the superior court to choose "the least restrictive ... disposition ... that addresses the juvenile's treatment needs and protects the public". Even before the current Delinquency Rules were enacted, this court recognized that the superior court in a delinquency case is obliged to "consider and reject less restrictive alternatives prior to impos[ing] [a] more restrictive [disposition]". *R.P. v. State*, 718 P.2d 168, 169 (Alaska App.1986). When the State seeks institutionalization of a delinquent minor, the State bears the burden of proving, by a preponderance of the evidence, that less restrictive alternatives will not satisfy the twin goals of rehabilitating the minor and protecting the public. Alaska Delinquency Rule 11(e); *Matter of J.H.*, 758 P.2d 1287, 1291 (Alaska App.1988); *R.P. v. State*, 718 P.2d at 169. There is a strong presumption against institutionalization of a minor. *Matter of J.H.*, 758 P.2d at 1291.

■■■ A minor's history of failed placements and continued violations of the law can justify the superior court's decision to institutionalize the minor. *See P.R.J. v. State*, 787 P.2d 123, 124–25 (Alaska App.1990). On the other hand, the "least restrictive alternative" rule "does not require that a child be allowed to fail at each [successively more restrictive] level of placement before placement in the next restrictive level may be made". *Matter of J.H.*, 758 P.2d at 1291. Rather, the court can institutionalize a minor if the State presents substantial evidence that lesser measures will likely fail to meet the twin goals of disposition under Delinquency Rule 11(e). *See Matter of J.H.*, 758 P.2d at 1291–93.

■ Judge Reese's remarks at the conclusion of the hearing show that he was well aware of his duty to view institutionalization as the disposition of last resort. These remarks also show that Judge Reese sent G.A.D. to McLaughlin with considerable reluctance:

It's hard to reach that conclusion. The presumption against McLaughlin placement is a very real thing for me. I don't think anybody ought to be locked up if there's any way to avoid it. But ... [G.A.D. has exhibited] very dangerous conduct, [and he] has done a lot of damage to these younger children[.] ... [T]his kind of conduct, this sexual conduct, and the manipulation and the lying and the evasion and so forth, has continued even in the Jesse Lee program.

. . . .

[G.A.D. is] someone who needs constant, close supervision and ... treatment. [He] need[s] to get involved in the treatment so the treatment can be successful. This kind of treatment is ... not like going to a doctor and having your appendix out. This kind of treatment you do yourself.... [G.A.D. has] to do the work.

. . . .

The other factor I've had in mind is the safety of the public. It's clear that [G.A.D.] must remain separated from the community if there's going to be any therapeutic success and if the public is going to be safe.

Overall, ... the whole situation is pretty bleak at this point. There has to be a change. [G.A.D.] is heading downhill. The initiating [conduct was] very serious and very dangerous. [G.A.D.'s] conduct at Jesse Lee has been very resistant; virtually no progress [has been made] there in rehabilitation. [G.A.D.'s] conduct [at Jesse Lee] does not give me any comfort as to the safety of the community [if G.A.D. were placed] in any unsecured setting ... available at this time, any that I'm aware of [or] that have been mentioned in the courtroom. Nor do I see any likelihood of therapeutic success unless [G.A.D. is] in a program with a great deal of structure to it. The McLaughlin program is the only

program that can [ensure] the community's safety ..., and its sex offender program, although it's similar to the Jesse Lee program, is still the best choice of treatment[.]

. . . .

[G.A.D.'s young] age is a very disturbing issue. He's very young, barely thirteen. All my impulses indicate ... that that's too young to lock somebody up[.] ... But, having listened to all the testimony and [having] read the documents, ... the seriousness of [G.A.D.'s] problems and the lack of any alternative ... for a secure and effective treatment program leaves [me] no choice other than the McLaughlin program.

On appeal, G.A.D. contends that Judge Reese lacked a substantial basis for ordering him placed at McLaughlin. However, as described above, G.A.D.'s mother, his therapist (Fairley), his probation officer (Moyland), and his guardian ad litem (Honea) all testified in favor of institutionalization. G.A.D. attacks Fairley's and Moyland's testimony as "conclusory"; he asserts that neither Fairley nor Moyland explained why placements short of institutionalization would be inadequate. We disagree.

Fairley's testimony focused primarily on the dispositional goal of rehabilitation. She testified that G.A.D. had failed to respond to sex offender treatment at the Jesse Lee Home. As noted above, G.A.D. conceded that his placement at the Jesse Lee Home was not working. Fairley also testified that, because of G.A.D.'s attitudes toward treatment and toward his offense, he needed continuous monitoring and immediate confrontation when he behaved inappropriately. The level of supervision at the Jesse Lee Home had proved inadequate, and G.A.D. would receive even less supervision if he were placed in foster care or at any group residential facility similar to Jesse Lee.

Moyland's testimony focused more on the dispositional goal of protecting the public. She testified that, given the nature of G.A.D.'s misconduct, his failure to respond to treatment, and his failure to recognize that he needed treatment, G.A.D. would remain a significant danger to the community until he

made substantial changes in his behavior. Moyland pointed out that if G.A.D. were placed in either foster care or the Kenai Care Center he would have less supervision and more access to the community than he did at the Jesse Lee Home. She also noted that, because G.A.D. had failed to improve at the Jesse Lee Home, it was unrealistic to expect him to improve at the Kenai Care Center.

With regard to the suitability of institutionalizing G.A.D. at the McLaughlin Youth Center, Moyland testified that she was familiar with all the potential placements within Alaska and that there were no other treatment options available. Consequently, the sex offender program at the McLaughlin Youth Center represented the least restrictive treatment option that would meet G.A.D.'s needs and protect the public.

Despite G.A.D.'s offer of proof before the hearing began, neither in his cross-examination of the State's witnesses nor in his own case did G.A.D. suggest that the State's witnesses had overlooked or substantially mischaracterized any available treatment programs or placement alternatives.[2] The State's witnesses conceded that the McLaughlin sex offender program was not significantly different from the treatment that G.A.D. had been receiving at Jesse Lee. The hoped-for difference was that, in the closed and confrontational setting of

McLaughlin, G.A.D. would be forced to recognize his problems and participate meaningfully in his own therapy—treatment goals that he had managed to circumvent at the Jesse Lee Home.

 G.A.D. argues that the testimony of the State's witnesses was not uniformly pessimistic—that this testimony offered some reason to believe that G.A.D. was making progress. However, our task as an appellate court is not to reweigh the evidence or see if it could possibly be interpreted in a different fashion. Rather, we must affirm the superior court's decision if it is supported by substantial evidence. *See Matter of J.H.*, 758 P.2d at 1291–92.

The record contains substantial evidence supporting Judge Reese's decision to commit G.A.D. to the McLaughlin Youth Center as the least restrictive alternative consistent with G.A.D.'s rehabilitation and protection of the public. Therefore, the judgement of the superior court is AFFIRMED.

---

**2.** On appeal, G.A.D. attacks the State for failing to discuss the specific details of G.A.D.'s treatment program at the Jesse Lee Home and for failing to provide the court with a psychological explanation of why that program was not working. We believe, however, that the sparseness of the State's evidence on this point can be squarely attributed to the fact that G.A.D. expressly conceded, at the beginning of the hearing, that the Jesse Lee treatment program was not working.