*360
OPINION

PER CURIAM.
The State of Alaska, Department of Labor, Employment Security Division- (ESD), determined that Jeffrey W. Risch was discharged for misconduct in connection with his work and thereby was disqualified from receiving benefits during the prescribed statutory period.[1] Specifically, ESD found, based on a positive urinalysis, that Risch had intentionally used marijuana in violation of a work rule. Risch appeals the superior court’s decision affirming ESD’s decision.
Risch was employed as a locomotive engineer with the Alaska Railroad Corporation (ARRC). On July 10, 1990, ARRC ordered Risch to report for random urinalysis testing. Risch submitted three specimens over several hours. The first specimen was rejected for insufficient volume and apparently was discarded. The attendant described the second specimen as cloudy and rejected it for insufficient temperature. The attendant marked this specimen “Void # 1” and submitted it for analysis. Risch produced a third specimen under observation which was clear and adequate in temperature and volume. The attendant marked this specimen “Void #2” and forwarded it for analysis.
One of these specimens tested positive for cannabinoids, which indicate the use of marijuana. The other specimen tested negative. On retesting by a different laboratory, the positive specimen again tested positive. The report for the negative specimen bears the handwritten notation, “Sample not up to Temperature.” ARRC terminated Risch effective August 14, 1990, for using drugs in violation of company rules.
Risch applied for unemployment benefits. ARRC contested Riseh’s entitlement to unemployment benefits on the grounds that he had been terminated for misconduct. ESD initially determined that Risch was “discharged for unintentional violation of a company policy” and declared him eligible for unemployment compensation. ARRC appealed this determination to an ESD Appeal Tribunal, which determined that Risch was terminated for misconduct connected with his work and therefore was disqualified from receiving benefits for the statutory period. Risch appealed to the Commissioner of Labor, who affirmed the tribunal’s decision. Risch then appealed to the superior court. After ARRC was granted permission to intervene, the superior court affirmed the tribunal’s decision. Risch then appealed to this court.
Risch claims that ESD’s determination that he was terminated for misconduct is based on improperly admitted evidence and is not otherwise supported by substantial evidence. We affirm.
Risch first claims that ESD improperly admitted the drug test results into evidence because he was coerced into waiving his rights of non-disclosure. Federal regulations prohibit ARRC from releasing employee drug test records or information derived from such tests without the “voluntary written consent of the employee.” 49 C.F.R. § 219.711(c) (1993). Risch argues that he never intended to authorize ARRC to release the results of his drug tests to ESD, and that he was coerced into waiving his objection to the disclosure at the ESD hearing. This argument is without merit.
The unemployment application signed by Risch contains the following authorization above the signature line:
I hereby apply for a determination of monetary eligibility and authorize my previous employers to release employment and separation information to the Employment Security Division. I also authorize the Employment Security Division to verify my eligibility for Unemployment Insurance with other agencies.... I understand that there are state and federal penalties for providing false information.... I also certify that the statements on these four pages made in connection with this claim are true to the best of my knowledge and belief.
ESD hearings were held on November 5 and December 3, 1990. At the first hearing, Risch, who was representing himself, object *361 ed to the introduction of all medical evidence by ARRC. After this objection was overruled, ARRC’s counsel questioned whether the authorization on the unemployment application was a sufficient written waiver under federal regulations to allow ARRC to release the drug test results to ESD. Although ARRC’s position was that the authorization was sufficient, counsel questioned whether Risch by his objection intended to withdraw the release. Risch stated that he never intended to authorize release of confidential medical information. The hearing officer then warned Risch that “if you withdraw your release, it could invalidate or otherwise stop all unemployment payments and it could — may turn this over to other offices to investigate what’s going on here. That could include the fraud investigations office.”
Risch then stated, “Okay. Well, under the threat of punishment, maybe I’ll withdraw ... under the threat of punishment and fraud investigation, I will withdraw my objection.” Following this statement, the hearing officer clarified that he did not mean to imply that Risch would be found guilty of fraud, but only that he might be investigated. Both the hearing officer and the counsel for ARRC then recommended that Risch consult with an attorney before proceeding. Risch stated that he had already had an opportunity to consult with an attorney, that he could not afford one, and that he was prepared to go forward rather than have “unemployment benefits interrupted while we fight over this.”
Neither the hearing officer nor ARRC’s counsel coerced Risch into waiving his confidentiality rights. On the contrary, both the hearing officer and ARRC’s counsel appear to have taken pains to explain the possible consequences of Risch’s waiver decision to him and to offer him additional opportunity to seek legal advice before deciding. In addition, Risch was afforded a choice on how to proceed. The fact that a choice different from the one he made could have resulted in his losing his unemployment benefits does not mean that he was wrongfully deprived of the choice. Cf. Zeilinger v. SOHIO Alaska Petroleum Co., 823 P.2d 653, 658 (Alaska 1992) (employer not responsible for burdensome financial condition of employee’s own making).[2]
Risch also argues that the drug test results should not have been admitted because the tests were conducted in violation of federal law. Under the federal Hours of Service Act (HSA), 45 U.S.C. §§ 61-66 (1988), no railroad employee can be required or permitted to continue on duty when he has not had at least eight consecutive hours off duty during the previous twenty-four hours. 45 U.S.C. § 62(a)(2) (1988). At the time ARRC ordered Risch to submit to drug testing, Risch had been technically on duty for close to twenty-four hours.[3] Risch argues that because the HSA prohibits ARRC from requiring Risch to stay on duty without *362 having had at least an eight hour break ■within a twenty-four hour period, and because federal regulations require that employees remain on duty while being tested, ARRC violated federal law by requiring Risch to take the test when he had not had a sufficient break in the previous twenty-four hours. Risch further argues that because the test results were obtained during a period when ARRC was prohibited from requiring or allowing Risch to remain on duty, the results should be disallowed.
Risch offers no support for his assertion that evidence obtained in violation of a civil statute should be excluded. The exclusive statutory penalty for violation of the HSA is a fine. 45 U.S.C. § 64a(a) (1988). The purpose of the HSA is
to promote safety in operating trains by preventing the excessive mental and physical strain which usually results from remaining too long at an exacting task. It must be construed and applied in view of that purpose and well-known circumstances attending the practical operation of trains.
Chicago & Alton R.R. v. United States, 247 U.S. 197, 199-200, 38 S.Ct. 442, 443, 62 L.Ed. 1066 (1918) (citation omitted). This purpose would not be furthered by excluding the drug tests, or frustrated by admitting them. Risch’s additional service (in submitting urine samples) did not impinge on the safety of the railroad’s operation. In addition, there is no private right of action for an employee forced to work in violation of the act. See United Transp. Union v. Lewis, 699 F.2d 1109, 1113 (11th Cir.1983). The federal regulations governing railroad drug testing do not provide for the suppression of test results obtained in violation of the HSA. See 49 C.F.R. §§ 40.25, 219 (1993). For these reasons, ESD did not err in admitting the drug test results despite the HSA violation.
Risch also claims that there was not substantial evidence in support of ESD’s determination that he had intentionally used marijuana in violation of company rules.[4] We disagree. First, there was substantial evidence before ESD that Risch had tested positive for marijuana. It is undisputed that one of the two specimens submitted by Risch tested positive for marijuana, and that the other specimen tested negative. Risch does not contend that one of these specimens was not produced by him.[5] Although none of ARRC’s witnesses affirmatively linked the positive result to the specimen marked Void #2,[6] the evidence supports ESD’s determination that the valid specimen tested positive. The negative report does bear the handwritten notation “sample not up to temperature.” Although this notation was not explained by ARRC’s witnesses, Risch did not object to it and ESD was entitled to rely on it. This would appear to be “such *363 relevant evidence that a reasonable mind might accept as adequate to support [the] conclusion” that Risch had eannabinoids in his system on July 10,1990. Storrs, 664 P.2d at 554.
Second, given the finding that Risch tested positive for marijuana, ESD’s further determination that Risch intentionally used marijuana is also supported by substantial evidence. Risch postulated several theories at the hearing on how he could receive a positive result without having intentionally used marijuana, including that his back medicine produced a false positive result and that he had been inadvertently exposed to marijuana while staying at railroad accommodations. Dr. Fyfe refuted each of these theories. She stated unequivocally that none of the medication Risch claimed to have used could have produced a false positive result. Dr. Fyfe also stated that passive inhalation of marijuana smoke would not produce the level of eannabinoids found in Risch’s sample. Because Dr. Fyfe’s testimony refutes Risch’s claims that the positive test could have resulted accidentally or from unintentional use, it is substantial evidence in support of ESD’s finding that Risch used marijuana intentionally.
Finally, Risch argues that ARRC failed to establish that he knew that marijuana use violated company rules or that such a violation was willful[7]. Basically, Risch argues that because at the time he was tested some marijuana use was legal in Alaska, any use by him was not necessarily in willful violation of ARRC’s prohibition against the use of illegal substances.
This argument is without merit. First, Risch never claimed before ESD that he had legally used marijuana. In fact, he repeatedly denied using marijuana and claimed to be unfamiliar with its smell. Second, as discussed above, there is substantial evidence that Risch intentionally used marijuana. Third, the parties do not dispute that marijuana use was generally illegal under federal law and specifically prohibited, on or off duty, for railroad workers at the time Risch was tested. See 49 C.F.R. § 219.102 (1993). Fourth, ESD could rationally interpret 8 AAC 85.095(d) as requiring only that the employee willfully commit an act that violated a reasonable employer standard of behavior, and not as requiring that the employee know, at the time he committed the act, that he was violating the employer standard.
The superior court’s decision affirming ESD’s determination that Risch committed misconduct in connection with his work is AFFIRMED: ESD did not err in admitting Risch’s drug test results into evidence. Risch validly waived the confidentiality of the test results and excluding the tests is not the appropriate remedy for violation of the HSA by ARRC. ESD’s factual finding that Risch intentionally used marijuana is supported by substantial evidence. Finally, ESD did not err in concluding that Risch’s action constituted misconduct in connection with work under AS 28.30.379(a)(2).

. AS 23.20.379(a)(2) disqualifies an insured worker for benefits for the first six weeks of unemployment if the worker was discharged for misconduct connected with work.

. Risch's coercion argument might have more force if the hearing officer's explanation of the consequences of Risch withdrawing his authorization was incorrect. However, the hearing officer appears to have been correct, at least to the extent that he warned Risch that his benefits might be cut off if he withdrew the authorization on the application. Unless the authorization was invalidly required or did not extend to the drug tests, withdrawal of the authorization would, in effect, cancel Risch’s application.
Risch does not challenge ESD's authority to require such an authorization in eveiy application. Risch does argue that the authorization he signed pertained only to "employment separation information” and did not authorize disclosure of otherwise confidential drug test results. He understands "employment separation information” to mean only "the reason Risch was discharged.” This is too narrow a reading. It would be nonsensical to allow a worker applying for unemployment benefits to force his employer to withhold the evidence behind the reason for discharge. In addition, AS 23.20.387 provides that an applicant is ineligible for benefits if she knowingly fails to reveal a material fact.

. Apparently Risch had, in the twenty-four hour period immediately preceding the testing order, worked eight hours, been off duty approximately seven and one half hours, and then worked another eight hour shift. Pursuant to railroad rules, employees off duty for less than eight consecutive hours were counted as having worked during their off period. Federal regulations required that Risch remain on duty during the drug testing. 49 C.F.R. § 219.601(b)(6) (1993). Although ARRC does not concede that Risch testified accurately about his hours, it did not offer any contradictory evidence. For purposes of this appeal, therefore, we accept Risch’s testimony as true.

. Whether an employee was dismissed for misconduct is a factual determination. Smith v. Sampson, 816 P.2d 902, 904 (Alaska 1991). This court therefore applies the substantial evidence standard of review to ESD’s determination. Id. Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.” Storrs v. State Medical Bd., 664 P.2d 547, 554 (Alaska), cert. denied, 464 U.S. 937, 104 S.Ct. 346, 78 L.Ed.2d 312 (1983). "In applying this standard, 'the reviewing court does not reweigh the evidence or choose between competing inferences; it only determines whether such evidence exists.'" Smith v. Sampson, 816 P.2d at 904 (quoting Storrs, 664 P.2d at 554).

. The one specimen that tested positive for marijuana might be considered substantial evidence in support of ESD's determination that Risch had marijuana in his system, regardless of whether this positive result was sufficiently linked to the void # 2 specimen. Nothing in the record indicates what effect insufficient temperature might have on the test results. There is, therefore, no reason to believe that void # 1 would be more likely to produce a false positive result or otherwise be scientifically invalid. The regulations indicate that the temperature requirement is intended as a check against specimen tampering. See 49 C.F.R. § 40.25(e)(2)(i) & (f)(13) (1993).

.The assertions in ARRC's brief that ARRC witnesses Fyfe and Baker linked the positive result to the valid test are not supported by record. Sharon Baker’s testimony consisted almost entirely of reading her notes concerning the taking of Risch’s urine samples. She did not address the actual drug tests performed on the samples. Dr. Fyfe also did not link a specific specimen to a positive result, but only stated what result was reached on each exhibit. Only ARRC’s counsel stated that the negative test result belonged to the invalid specimen and that the positive test result came from the valid specimen.

. ESD regulations define "misconduct connected with work,” the applicable statutory standard for temporary disqualification from unemployment benefits, AS 23.20.379(a)(2), as "any willful violation of the standards of behavior which an employer has the right to expect of an employee.” 8 AAC 85.095(d).