233 P.3d 1118 (2010)
B.F.L., a minor, Appellant,
v.
STATE of Alaska, Appellee.
No. A-10468.
Court of Appeals of Alaska.
June 11, 2010.
Renee McFarland, Assistant Public Defender, and Quinlan Steiner, Public Defender, Anchorage, for the Appellant.
Joan M. Wilson, Assistant District Attorney, Anchorage, and Daniel S. Sullivan, Attorney General, Juneau, for the Appellee.
Before: COATS, Chief Judge, and MANNHEIMER and BOLGER, Judges.

OPINION
MANNHEIMER, Judge.
B.F.L., a minor, appeals the superior court's order committing him to the custody of the Department of Health and Social Services pursuant to AS 47.12.120(b)(1)  in other words, an order that allows the Department to place B.F.L. in a juvenile detention facility. B.F.L. argues that the superior court failed to adequately consider the feasibility of a disposition under either subsection 120(b)(2) or subsection 120(b)(3) of the statute  that is, a disposition that would have limited the Department to placing B.F.L. in non-detention facilities.
As we describe in this opinion, B.F.L. has a history of repeated failures both on probation and in non-detention placements. In addition, B.F.L. has demonstrated resistance to needed mental health treatment and medication. These factors provide ample basis *1119 for the superior court's decision to allow the Department to place B.F.L. in a detention facility.
B.F.L.'s history within the juvenile justice system
B.F.L.'s history of juvenile delinquency began in the summer of 2006, just after he turned fifteen years old. The Department filed a delinquency petition charging him with second-degree burglary, fourth-degree criminal mischief, fourth-degree theft, and sixth-degree misconduct involving a controlled substance.
In October 2006, B.F.L. admitted the burglary, theft, and criminal mischief charges. Because he was a first offender, the superior court held his delinquency adjudication in abeyance for six months, with the anticipation that if he demonstrated rehabilitative progress during these six months of informal probation, the delinquency case would be dismissed.
As part of his informal probation, B.F.L. agreed to various conditions of conduct formulated by the Department. Among these conditions, B.F.L. agreed that he would attend school regularly, that he would live with his mother and follow the rules set by her, that he would keep in regular contact with the Department's juvenile probation office, and that he would not ingest illegal substances.
One month after agreeing to these conditions, B.F.L. stopped going to school, and his mother reported that he was out of control. At about the same time, B.F.L. attempted to commit suicide. The superior court issued a warrant for B.F.L.'s arrest; he was taken into custody on December 3, 2006 and placed at the Fairbanks Youth Facility.
B.F.L. remained in pre-adjudication custody at the Fairbanks Youth Facility until March 8, 2007. On that date, the superior court rescinded the "hold in abeyance" agreement, and the superior court adjudicated B.F.L. a delinquent minor.
In a delinquency proceeding, if the superior court decides to subject the minor to some level of ongoing government supervision, there are essentially three types of disposition available to the court under the provisions of AS 47.12.120(b).
The least restrictive disposition is defined in subsection (b)(2) of the statute. Under this subsection, the court places the minor on probation (supervised by the Department), but releases the minor to the custody of parents, guardians, or other suitable persons.
The next level of restriction is defined in subsection (b)(3) of the statute. Under this subsection, the court commits the minor to the custody of the Department, giving the Department the authority to release the minor to the custody of parents or guardians, or to place the minor in a foster home or any suitable non-detention residential facility. (Subsection (b)(5) of the statute, which authorizes the superior court to commit the minor to the custody of the Department for the specific purpose of placing the minor in an "adventure-based" education program, appears to be a more restricted variant of the commitment authority granted by subsection (b)(3).)
The highest level of restriction is defined in subsection (b)(1) of the statute. Under this subsection, the court commits the minor to the custody of the Department, giving the Department the authority to make any placement it deems appropriate  including placement in a detention facility.
Both Alaska Delinquency Rule 11(e) and its companion statute, AS 47.12.140(2), specify that when the superior court chooses among the three dispositions defined in AS 47.12.120(b)(1)  (b)(3), the court must impose "the least restrictive alternative", given the rehabilitative needs of the minor and the need to protect the public. Delinquency Rule 11(e) also declares that the State bears the burden of proving by a preponderance of the evidence that the chosen disposition is the least restrictive alternative.
In B.F.L.'s case, the superior court concluded that a disposition under subsection (b)(2) was appropriate. That is, the court placed the minor on probation to the Department. As a special condition of probation, the court ordered B.F.L. to complete the residential treatment program offered by Alaska Children's Services, but then B.F.L. *1120 was to be released to the custody of his sister in Idaho.
B.F.L. began his treatment at Alaska Children's Services, but in early July (that is, after about four months), he absconded from this residential program. B.F.L. remained at large for four days until he was arrested. When B.F.L. was arrested, the Department asked Alaska Children's Services to re-admit B.F.L. into the treatment program, but Alaska Children's Services refused. The staff at Alaska Children's Services concluded that B.F.L.'s behavior was too risky for the level of supervision that they could offer.
B.F.L. remained in the Department's custody, first at the McLaughlin Youth Center and then at the Fairbanks Youth Facility, until the end of September 2007, when he was released to his father and flown to Anchorage for admission to the Alaska Military Youth Academy. In conjunction with this placement, B.F.L.'s conditions of probation were modified to require successful completion of the Alaska Military Youth Academy.
Two weeks after his admission to the Alaska Military Youth Academy, B.F.L. absconded. A bench warrant was issued for his arrest on October 16th, but this warrant remained unserved until November 1st  when B.F.L. was arrested for vehicle theft.
On December 6, 2007, the Department filed a new delinquency petition against B.F.L. On January 16, 2008, B.F.L. admitted several of the allegations in this petition: that he committed first-degree vehicle theft, that he drove without a valid license, and that he failed to obey the rules of his placement.
At this point, the Department asked the superior court to issue a disposition under subsection (b)(1) of the statute  i.e., an order that would allow the Department to place B.F.L. in a detention setting.
B.F.L. wrote a letter to the superior court, arguing against institutionalization. In this letter, B.F.L. told the judge:
I have learned ways to deal with things and ways to avoid things. In the past[,] I have not really [taken] account [of] what I had to look forward [to,] because I didn't really think I had much[.] [B]ut now I see I have a whole life ahead of me[,] full of options[;] now I know what I have. I have a loving family who cares about me[.] I know now [that] I have what it takes to win[, or to] fail[,] but I'm out to win .... I don't see where further treatment or institution[alization] will benefit me in any way, [and] I believe I have the tools to win.
B.F.L. asked the superior court to again release him to his sister in Idaho.
B.F.L.'s attorney submitted a mental health evaluation conducted by Moreen Fried, a clinical social worker. Ms. Fried concluded that B.F.L. likely suffered from bipolar disorder, based on his "rapidly alternating moods [and] symptoms of mania and depression".
Ms. Fried expressed concern that B.F.L.'s father was apparently opposed to allowing B.F.L. to take psychotropic medication to treat this disorder, and she recommended that B.F.L. be placed in a residential treatment facility that could respond to, and treat, B.F.L.'s psychiatric condition. Ms. Fried specifically recommended the residential treatment program at Alaska Children's Services  the place from which B.F.L. had earlier absconded.
Indeed, the Department of Health and Social Services had already re-submitted B.F.L.'s case to Alaska Children's Services, asking them to evaluate his suitability for their program. Alaska Children's Services concluded that B.F.L. was unsuitable for placement in their residential program. They recommended a "locked-egress" facility  i.e., a detention facility  "for [B.F.L.'s] safety".
In March 2008, based on all of the foregoing, the superior court followed the Department's recommendation and issued a disposition order under subsection (b)(l) of the statute  that is, an order that allowed the Department to place B.F.L. in a detention facility. However, the court told B.F.L. that if he took his medication as directed, and if he showed progress toward rehabilitation in the next four months, the court would be willing to consider amending the disposition order to a disposition under either subsection (b)(2) or (b)(3) of the statute.
*1121 A little over three months later, on June 19, 2008, the Department submitted its review of B.F.L.'s progress. According to the Department's report, by the second week of B.F.L.'s institutionalization at the Fairbanks Youth Facility, he began resisting the rules of the facility and became "verbally abusive and argumentative with [the] staff." One month into his treatment, B.F.L. was sent to the detention unit of the facility for engaging in a fight. One month later, B.F.L. slapped another resident.
One of the Fairbanks Youth Facility's mental health clinicians had evaluated B.F.L. and had confirmed Ms. Fried's earlier diagnosis of bipolar disorder. This clinician recommended continued treatment in a detention facility.
In June and July, the superior court conducted its review hearings in B.F.L.'s case. Despite the Department's recommendation that the court re-affirm its subsection (b)(1) disposition, the court amended the judgement to a subsection (b)(2) dispositionthat is, a probationary dispositionand allowed B.F.L. to be released to live with his mother in Anchorage.
(Because of this Anchorage placement, the superior court granted the Department's request for a change of venue in the delinquency proceeding, from Fairbanks to Anchorage.)
Within weeks after the superior court released B.F.L. to his mother, B.F.L.'s mother contacted the Department to report that B.F.L. was misbehaving and would often yell at his mother and her sister. Then, one week later, B.F.L. left his mother's home and did not return. On August 29th, the Department petitioned the superior court to revoke B.F.L.'s probation.
A little over two weeks later, on September 15th, B.F.L. was observed on the grounds of West High School in Anchorage. A school official who was familiar with B.F.L. attempted to talk to him, but B.F.L. ran away. B.F.L.'s whereabouts remained unknown until October 26th. On that day, B.F.L. was arrested in Dillingham on charges of first-degree burglary and second-degree theft. B.F.L. was detained for a time on these Dillingham charges, but ultimately these new charges were dismissed and B.F.L. was returned to Anchorage to face probation revocation proceedings.
B.F.L. admitted that he had violated his probation, but his attorney again argued against a subsection (b)(1) disposition. The defense attorney attributed B.F.L.'s failure on probation to his mother's shortcomings. Specifically, the defense attorney alleged (1) that B.F.L.'s mother knew where he was during the entire time that he was gone from her home; (2) that B.F.L. attempted to get counseling, but his mother told him that she did not have the time to help him; and (3) that B.F.L. repeatedly called his mother and asked her if he could return to school. The defense attorney asked the superior court to again release B.F.L. to the custody of a family member, "under close supervision". In particular, B.F.L.'s father, who lives in Two Rivers (a small town outside of Fairbanks) told the court that he was willing to have B.F.L. live with him.
B.F.L.'s disposition hearing was held in front of Children's Master William Hitchcock over the course of three days in late February and early March 2009. The juvenile probation officer who appeared on behalf of the Department told the court that the Department was again seeking a subsection (b)(1) disposition because of B.F.L.'s "multiple failed placements" in non-detention, residential settings, as well as B.F.L.'s "severe flight risk".
Master Hitchcock agreed with the Department's assessment. Based on the record in B.F.L.'s case, he concluded:
[B.F.L.'s] delinquent [behavior] ... stem[s] from mental health issues which have been amply diagnosed and identified by mental health clinicians during his time in Fairbanks. ... [T]hese evaluations reveal a very complex individual who has been consistently unable to manage his behavior within the restrictions imposed upon him through probation or institutional commitment. He exhibits a consistent pattern of temperamental outbursts and rages which place him time and time again in conflict with authority.
*1122 Master Hitchcock then concluded, based on B.F.L.'s behavior and these psychological evaluations, that the superior court should impose a subsection (b)(1) dispositionthat less restrictive alternatives would not meet B.F.L.'s rehabilitative needs or provide the community sufficient protection from B.F.L.'s criminal behavior. Master Hitchcock declared:
[B.F.L.] needs to re-engage in a comprehensive youth correctional program before he turns 18. Society has a keen interest in this happening, else [B.F.L.] become yet another candidate for correctional placement as an adult. ... [He] is no longer a child; he will be an adult in four months. There is precious time left to change the future for [B.F.L.]. He is going to need help and support in making this happen. It is my recommendation that the institutional order be entered.
These findings and this recommendation were reviewed and approved by Superior Court Judge Eric A. Aarseth on March 10, 2009.

The test to be employed when evaluating the superior court's decision
As we have already discussed, Alaska law requires the State to prove by a preponderance of the evidence that the particular type of disposition chosen by the superior courti.e., a disposition under subsection (b)(2), subsection (b)(3), or subsection (b)(1) of AS 47.12.120is the "least restrictive alternative" that will satisfy the minor's rehabilitative needs and protect the public. See AS 47.12.140(2) and Delinquency Rule 11(e).
In his briefs to this Court, B.F.L. acknowledges that this is the test, but B.F.L. argues that further proof is needed before the superior court imposes a disposition under subsection (b)(1)i.e., a disposition that allows the Department to place the minor in a detention facility. B.F.L. relies heavily on something that this Court said in Matter of J.H., 758 P.2d 1287 (Alaska App.1988).
In J.H., this Court declared that, because "[t]he goal of rehabilitation is always of paramount importance in children's proceedings", there is "a strong presumption against institutionalization... in all but extreme cases". 758 P.2d at 1291, citing R.P. v. State, 718 P.2d 168, 169 n. 1 (Alaska App.1986). Based on this passage from J.H., B.F.L. argues that the superior court should not have imposed a subsection (b)(1) disposition in his case, because his case is not "extreme".
The State argues that this passage from J.H. has been superseded by the Alaska Supreme Court's later enactment of Delinquency Rule 11(e) and the Alaska Legislature's later enactment of AS 47.12.140.
Delinquency Rule 11(e) states that, "to support a particular disposition [in a delinquency proceeding], ... the Department must prove by a preponderance of the evidence that the disposition is the least restrictive alternative appropriate to the needs of the juvenile and the protection of the community." And, in a similar vein, AS 47.12.140(2) defines "the least restrictive alternative" as "that disposition [which] is no more restrictive than is ... conducive to the minor's rehabilitation[,] taking into consideration the interests of the public."
We believe that the State has the better of this argument.
The statements that this Court made in J.H. concerning the proper disposition of delinquency proceedings were directly based on our earlier decision in R.P. v. State, 718 P.2d 168 (Alaska App.1986). The problem that this Court confronted in R.P. was that, in 1986, Alaska law provided the same three alternative types of disposition in delinquency proceedings, but "[u]nfortunately, the statute provide[d] little guidance for the [superior] court to use in choosing one alternative and rejecting the others". Id. at 169. In other words, there was no statute or court rule that provided a standard for choosing one type of disposition over another.[1]
*1123 To fill this legislative vacuum, this Court exercised its common-law power to announce a standard that would govern the superior court's choice of disposition:
We therefore recognize the standards promulgated by the IJA-ABA Juvenile Justice Standards Project, Standards Relating to Dispositions (tentative draft 1977).... Under [these] Standards, the court must consider and reject less restrictive alternatives prior to imposition of more restrictive alternatives. Further, the state has the burden of proving that less restrictive alternatives are inappropriate by a preponderance of the evidence. See Standards, § 2.1 and commentary at 34-35. The court must enter specific written findings why the less restrictive alternatives are inappropriate in a given case, and those findings must be supported by a preponderance of the evidence. Id. at 37-38.
R.P., 718 P.2d at 169 (emphasis in the original).
In an accompanying footnote (footnote 1), this Court declared that the goals of disposition in juvenile delinquency proceedings were different from the goals of sentencing in adult criminal proceedings. We stated:
In adult criminal proceedings, the goal of rehabilitation is generally considered on equal footing with other sentencing goals. See State v. Chaney, 477 P.2d 441, 444 (Alaska 1970). However, in juvenile dispositions, the goal of rehabilitation is of paramount importance. See In re Aline D., [14 Cal.3d 557] 121 Cal.Rptr. 817 [816], 536 P.2d 65, 70 ([Cal.] 1975). Consequently, to further the goal of rehabilitation, the IJA-ABA Standards create a presumption against coercively removing a child from his or her home in all but extreme cases. See Standards, § 3.3 B at 61.
For present purposes, the important thing to note about the preceding footnote is that, again, this Court was exercising our common-law power to declare the law in the absence of a governing statute or court rule. When we declared that "the goal of rehabilitation is ... paramount" in delinquency proceedings, we did not cite any Alaska statute or court rule; rather, we cited a decision of the California Supreme Courta decision that, of course, has no binding power in Alaska court proceedings. And when we declared that there was "a presumption against coercively removing a child from his or her home in all but extreme cases", we cited the ABA Standardsagain, a non-binding source. In effect, this Court was saying that we were persuaded to adopt these standards as the law that would govern future Alaska delinquency proceedings.
But after our decision in R.P., the supreme court enacted Delinquency Rule 11(e) and the legislature enacted AS 47.12.140. Between them, this court rule and this statute address the same issues that we addressed in R.P.: (a) defining the goals of a juvenile delinquency disposition; (b) specifying the test that the superior court must use when choosing among the types of disposition authorized by AS 47.12.120(b) (i.e., the "least restrictive alternative" test); and (c) identifying the burden of proof that applies to the question of which level of disposition is the "least restrictive" feasible alternative.
Now that Alaska has a court rule and a statute that govern these matters, this court rule and this statute have replaced any contrary common-law rule that this Court announced in R.P. and J.H. As we noted in Dominguez v. State, 181 P.3d 1111, 1114 (Alaska App.2008), "[W]hen a statute or court rule has been enacted for the purpose of governing a matter that was once governed by a common-law rule, the statute or court rule supersedes the common-law rule."
Delinquency Rule 11(e) and AS 47.12.140 still embody a presumption against the involuntary removal of a minor from their home. Indeed, this presumption applies whether the *1124 proposed removal is to a non-detention facility under subsection (b)(3) or (b)(5) of AS 47.12.120 or to a detention facility under subsection (b)(1) of the statute. The presumption against involuntary removal is simply the legal corollary of the rule that the State must affirmatively prove that the superior court's chosen disposition is the "least restrictive alternative". In effect, this burden of proof establishes a presumption that the superior court must impose a non-removal disposition (i.e., either or both of the dispositions defined in subsections (b)(2) and (b)(4) of the statute) unless the State proves otherwise.
But Delinquency Rule 11(e) and AS 47.12.140(2) have superseded the portions of R.P. and J.H. where we declared that, "in all but extreme cases", the superior court must refrain from "coercively removing a child from his or her home" under either AS 47.12.120(b)(3) or (b)(1).
As this Court explained in footnote 1 of R.P., 718 P.2d at 169, this "extreme cases" limitation was based on the underlying premise that disposition decisions in delinquency proceedings were fundamentally different from disposition decisions in criminal cases, in that the "paramount" goal of a juvenile delinquency proceeding was rehabilitation of the minor, with all other goals (including protection of the public) having lesser importance.
This underlying premisethe premise that, in delinquency proceedings, the goal of rehabilitation is more important that any other goalis no longer true. Both AS 47.12.140(2) and Delinquency Rule 11(e) declare that there are two primary goals when choosing the proper disposition in a delinquency proceeding: the rehabilitative needs of the juvenile and the protection of the community.
Moreover, Delinquency Rule 11(e) declares that, when the superior court selects the least restrictive alternative that will achieve these two goals, the government's burden of justifying a particular level of restriction is by a "preponderance of the evidence". In other words, the government must show that, more likely than not, the selected disposition represents the least amount of restriction required to achieve the two goals of rehabilitation and protection of the public.
To the extent that our references in R.P. and J.H. to "extreme cases" suggest that some higher burden of proof applies to a disposition under subsection (b)(3) or (b)(1) of AS 47.12.120, or that some additional factor must be proved to justify a disposition under (b)(3) or (b)(1) of the statute, we now disavow any such suggestion.

Why we affirm the superior court's decision
The remaining question is whether the record supports the superior court's conclusion that a disposition under subsection (b)(1) of the statutei.e., an order that allows the Department to place B.F.L. in any facility, including a detention facilityis the least restrictive alternative that will satisfy the minor's rehabilitative needs and protect the public.
As we acknowledged in J.H., and again more recently in G.A.D. v. State, 865 P.2d 100 (Alaska App.1993), the requirement of a "least restrictive alternative" disposition "does not require that a child be allowed to fail at each successively more restrictive level of placement before placement in the next restrictive level may be made". G.A.D., 865 P.2d at 102 (quoting J.H., 758 P.2d at 1291). Rather, the superior court can authorize a detention placement whenever the State presents substantial evidence that lesser measures will likely fail to meet the twin goals of disposition specified in AS 47.12.140(2) and Delinquency Rule 11(e). G.A.D., 865 P.2d at 102; J.H., 758 P.2d at 1291-93.
B.F.L.'s case, however, does present an instance where the two lesser levels of restrictioni.e., returning him to his parent's home under conditions of probation, and placement at residential programshave been tried and have failed.
As we explained in the first section of this opinion, B.F.L. was originally placed with his mother; when that didn't work, he was placed in the residential treatment program offered by Alaska Children's Services. After *1125 B.F.L. absconded from that program, he was housed in a detention facility for several months, but B.F.L. persuaded the superior court to release him to the Alaska Military Youth Academyfrom which he absconded within a matter of weeks.
This time, the superior court issued a disposition order under subsection (b)(1) of the statutethat is, an order that allowed the Department to place B.F.L. in a detention facility. But several months later, B.F.L. succeeded in having the superior court amend that order to a subsection (b)(2) dispositionthat is, a probationary dispositionthat allowed B.F.L. to be released to live with his mother in Anchorage. Within weeks, B.F.L. absconded from this placement, and he remained at large for two months, until he was arrested for burglary and vehicle theft in Dillingham.
This record provides substantial support for the superior court's conclusion that a "detention" dispositioni.e., a disposition under subsection (b)(1) of the statuteis the least restrictive alternative available.
B.F.L. argues that his situation is more promising than it might appear, and that there is some reason to believe that he would be successful if he was released on probation and allowed to live with his father in Two Rivers. But as we explained in G.A.D., 865 P.2d at 104, "our task as an appellate court is not to reweigh the evidence or see if it could possibly be interpreted in a different fashion. Rather, we must affirm the superior court's decision if it is supported by substantial evidence."
Under the "substantial evidence" test, we must uphold the superior court's decision "if the record contains evidence that a reasonable mind might accept as adequate to support the challenged conclusion". Y.J. v. State, 130 P.3d 954, 957 (Alaska App.2006).[2] Here, Master Hitchcock and Judge Aarseth could reasonably conclude that a disposition order under subsection (b)(1) was the least restrictive alternative that would satisfy the twin goals of rehabilitation and protection of the community.
Accordingly, the judgement of the superior court is AFFIRMED.
NOTES
[1] In 1987 (the year after this Court issued our decision in R.P.), the supreme court enacted Delinquency Rule 11(e), which for the first time specified that "to support a particular disposition [in a delinquency proceeding], ... the Department must prove by a preponderance of the evidence that the disposition is the least restrictive alternative appropriate to the needs of the juvenile and the protection of the community." See Supreme Court Order No. 845 (effective August 15, 1987).

The corresponding statute, AS 47.12.140(2), was not enacted until 1996. See SLA 1996, ch. 59, § 46. Prior to that time, the only statutory guidance or directive to the superior court was found in former AS 47.10.082 ("Best interests of child and other considerations"). That statute read: "In making its dispositional order [in a delinquency proceeding,] the court shall consider the best interests of the child and the public."
[2] Quoting Smith v. Sampson, 816 P.2d 902, 904 (Alaska 1991).